HARVEY K. FAIR *v.* WARDEN, STATE PRISON
(13489)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued March 29—decision released June 6, 1989

*Temmy Ann Pieszak,* assistant public defender, for the appellant (petitioner).

*Paul J. Ferencek,* deputy assistant state's attorney, with whom, on the brief, was *Robert Devlin, Jr.,* assistant state's attorney, for the appellee (respondent).

PETERS, C. J. The principal issue in this appeal is whether the petitioner has established that his conviction of the crime of first degree robbery should be overturned because of ineffective assistance of counsel. A jury found the petitioner, Harvey K. Fair, guilty of first degree robbery, in violation of General Statutes §§ 53a-8 and 53a-134 (a) (3),[1] and of escape from cus-

[1] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

General Statutes § 53a-134 (a) (3) provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime

tody, in violation of General Statutes § 53a-171.[2] The trial court imposed on the petitioner an effective sentence of twenty years imprisonment, suspended after fifteen years and three years probation. He then brought a petition in the Superior Court for a writ of habeas corpus claiming that ineffective assistance of counsel at his trial entitled him to a new trial. The habeas court denied the writ and the petitioner, upon the granting of certification, appealed to the Appellate Court. We transferred the case to ourselves pursuant to Practice Book § 4023 and now find no error.

The relevant facts can be summarized as follows. At about 4 a.m. on December 24, 1983, Anthony O'Neil walked into a New Haven convenience store and asked the clerk for a candy bar. Upon directing O'Neil toward the candy, the clerk noticed the petitioner "sneaking" around outside the door. O'Neil then began hitting the clerk on the head with a hard narrow metal object. The clerk momentarily lost consciousness and fell to the floor. The petitioner had by then entered the store, where he observed that O'Neil had struck the clerk, and yet the petitioner offered the clerk no assistance. Neither O'Neil nor the petitioner could open the cash register, and therefore the clerk was ordered to do so.[3]

or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

General Statutes § 53a-133 defines the commission of a robbery as "when, in the course of committing a larceny, [a person] uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[2] General Statutes § 53a-171 provides: "(a) A person is guilty of escape from custody if he escapes from custody.

"(b) If a person has been arrested for, charged with or convicted of a felony, escape from such custody is a class C felony, otherwise, escape from custody is a class A misdemeanor."

[3] The record is unclear as to who actually ordered the clerk to open the register: O'Neil, the petitioner or both.

Before fleeing, the two took between $500 and $600 and several packs of cigarettes from the store. The store's video cameras captured the entire incident on film. After his arrest the petitioner successfully escaped from custody, but turned himself in two days later. A jury convicted the petitioner of both first degree robbery and escape from custody.

The petitioner then brought an action in the Superior Court against the respondent, warden of the state prison, seeking a writ of habeas corpus. He claimed, inter alia,[4] that the failure of his trial counsel, Peter Kelly, to request a jury instruction on the lesser included offense of larceny and trial counsel's statement during closing argument to the effect that there was not much question about the petitioner's liability for robbery, deprived him of effective assistance of counsel in violation of his federal and state constitutional rights. U.S. Const., amends. VI and XIV; Conn. Const., art. I, § 8.

After a three day hearing, the habeas court denied the petition,[5] ruling that the petitioner had not been deprived of effective assistance of counsel because: (1) the state's overwhelming evidence at trial that the defendant had "knowingly and willfully" assisted O'Neil made it "professionally reasonable" not to have requested a lesser included offense charge; and (2) regardless of trial counsel's comments during summation, "it is highly improbable, based on the strength of the state's case, that such comments influenced the outcome of petitioner's trial."

---

[4] In his revised amended petition, the petitioner raised thirty-five claims of trial counsel's ineffective assistance. He briefed only six of those claims to the habeas court and has appealed the court's ruling on only two of those six.

[5] The habeas court found that the petitioner had not deliberately bypassed a direct appeal, and therefore had standing to file the habeas petition. See *State* v. *Rivera,* 196 Conn. 567, 570–72, 494 A.2d 570 (1985).

On appeal the petitioner renews these two claims of ineffective assistance of counsel and also contends that the habeas court's conduct created the appearance of impropriety, thus depriving him of a fair hearing on his ineffective assistance claim. None of the petitioner's arguments persuades us.

## I

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984); *Aillon* v. *Meachum,* 211 Conn. 352, 357, 559 A.2d 200 (1989).

## A

The petitioner first claims that trial counsel rendered ineffective assistance in failing to request that the trial court charge the jury on larceny, a lesser included offense of robbery. He contends that, while he admittedly participated in taking the money, he did not intend or plan O'Neil's use of force in the theft, and therefore the jury could reasonably have found him guilty of larceny instead of robbery. The petitioner so testified both at trial and at the habeas hearing.[6] The

---

[6] At trial the petitioner testified that he and O'Neil had not planned to assault the clerk, but that O'Neil had "just bugged out or flipped out or something." At the habeas hearing, he testified that he had informed trial counsel that he and O'Neil had planned the incident as a "shoplifting" and that he did not foresee O'Neil's use of force on the clerk.

petitioner claims that, with his intent regarding the incident sufficiently in dispute, the trial court would have instructed the jury on larceny had he so requested. He therefore argues that the habeas court erred in finding that a lesser included offense instruction was unavailable and contends that trial counsel's failure to appreciate the lesser charge of larceny as a viable theory constituted ineffective assistance of counsel.

We agree with the petitioner that evidence is sufficiently in dispute if " 'reasonable minds could differ upon the existence or nonexistence of the element that distinguishes the inclusive from the included offense.' " *State* v. *Manley,* 195 Conn. 567, 575, 489 A.2d 1024 (1985); see also *State* v. *Green,* 207 Conn. 1, 14, 540 A.2d 659 (1988). We therefore assume, without deciding, that on these facts, had trial counsel requested an instruction on the lesser included offense of larceny, the trial court would have had so to instruct the jury. We do not agree, however, that trial counsel's failure to request such a charge amounts per se to a demonstration that "counsel's performance was deficient," thus fulfilling the first prong of *Strickland.*

Establishing that counsel's performance was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* v. *Washington,* supra, 687. To demonstrate this "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id., 687–88. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id., 688. "Judicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id., 689, quoting *Michel* v. *Louisiana,* 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955), reh. denied, 350 U.S. 955, 76 S. Ct. 340, 100 L. Ed. 831 (1956); see also *Burger* v. *Kemp,* 483 U.S. 776, 788–96, 107 S. Ct. 3114, 97 L. Ed. 2d 639 (1987); *Darden* v. *Wainwright,* 477 U.S. 168, 185–86, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986); *Aillon* v. *Meachum,* supra, 357; *Valeriano* v. *Bronson,* 209 Conn. 75, 86, 546 A.2d 1380 (1988); *Levine* v. *Manson,* 195 Conn. 636, 640, 490 A.2d 82 (1985).

A majority of jurisdictions addressing the issue have held that counsel's failure to request a lesser included offense instruction does not necessarily deprive a defendant of reasonably effective assistance of counsel. See, e.g., *Kubat* v. *Thieret,* 867 F.2d 351, 364–65 (7th Cir. 1989); *United States* v. *Hall,* 843 F.2d 408, 413 (10th Cir. 1988); *Woratzeck* v. *Ricketts,* 820 F.2d 1450, 1455 (9th Cir. 1987); *Pride* v. *State,* 285 Ark. 89, 91, 684 S.W.2d 819 (1985); *Young* v. *State,* 482 N.E.2d 246, 251 (Ind. 1985); *Morgan* v. *State,* 384 N.W.2d 458, 460–61 (Minn. 1986); *Codianna* v. *Morris,* 660 P.2d 1101, 1113 (Utah 1983). It may be sound trial strategy not to request a lesser included offense instruction, hoping that the jury will simply return a not guilty verdict. See, e.g., *State* v. *Asherman,* 193 Conn. 695, 729, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985) (defendant objected to trial court charging the jury on lesser included offense).[7]

---

[7] We recognize that there may be a more limited justification for such a strategy in cases such as the present one in which the petitioner did not at trial allege his total innocence of all the crimes with which he had been charged. Nonetheless, trial counsel in this case might reasonably have concluded that such a strategy was appropriate in order to maximize the possibility that the jury, feeling sympathetic toward the petitioner, might have acquitted him of one of the two charges that he faced.

At the habeas hearing, trial counsel testified that he believed the petitioner had no viable defense to the robbery charge and that, given the evidence, he "was very doubtful that an instruction on lesser included [offenses] would have been given." Trial counsel stated that he had concluded, early in the trial, that the petitioner "had virtually no hope . . . of beating the robbery charge." While he counseled the petitioner to accept the plea bargain offered by the state, the petitioner decided he wanted a trial and, moreover, wanted to testify. Trial counsel warned that the jury would most likely convict the petitioner on both the robbery and escape charges, although it was possible, as the petitioner believed, that, given a chance to tell his story, he might convince the jury not to convict him on the escape charge.[8]

Trial counsel also testified at the habeas hearing that he did not pursue a lesser included offense instruction because he believed there was overwhelming evidence

---

[8] Trial counsel testified at the habeas hearing: "I had concluded fairly early on that he had virtually no hope of winning, of beating the Robbery charge so to speak. But there was a certain sympathy to his story of how things happened, his hard luck, and he was not an entirely unappealing person as a personality. He has a certain method of being able to articulate the dilemma he found himself in. I strongly recommended that he take the bargain that the State had offered, but it was clear early on that he'd already been down that road and had decided against it. He wanted a trial; not only that, he wanted to testify. I indicated to him that I was as sure as I could be that he was going to be convicted, at least of the Robbery, and if the jury adhered to their oath and the evidence that I was aware of, that they were going to convict him of both and that he'd probably be facing a much stiffer penalty. I think his feeling was, at least it appeared to me, that if he were able to get up and explain to the jury just how wretched his circumstances were and how bad his luck was that he might be able to possibly with the best of luck that he might be able to convince them maybe on the Escape charge that it really wasn't willful in that there were a lot of other things, and they might let him off on that; that was my thinking, and I communicated that to him that, you know, the best you could hope for, and I held out a very slim hope that maybe they will let you off on the Escape charge, but you go into this thing with the idea in mind that you're going to be convicted on both."

supporting the robbery charge. He explained: "[I]t's very important for me to try to preserve some integrity with the jury and to the extent I can [I] do that by not antagonizing them or by not suggesting scenarios that they find totally implausible or ridiculous." Thus, trial counsel admitted at the habeas hearing that his defense was essentially a plea for juror sympathy.[9]

The petitioner's entire case at trial consisted of such a plea for sympathy. By his own demand, the petitioner took the stand, testifying about his prior convictions, his recent unemployment and a recent death in his family. He also testified that on the night of the incident, the day before Christmas, he and O'Neil had been sniffing cocaine and that he had become "depressed," "angry," "confused" and "desperate," worrying about his inability to buy Christmas presents for his children or his fiancee.

The petitioner also testified that after his arrest, he had exchanged angry words with Judge Kinney at a pretrial hearing and, upon returning to his cell, "was angered and confused and afraid." He stated that he had escaped "out of despair." When a cellmate presented him with an opportunity to escape, he first said no, but then "I kept thinking about all the things I was going through, so I said yeah." Only cross-examination by the state elicited from the petitioner any specifics about the crime itself, while his own case simply focused on mustering sympathy.

---

[9] Trial counsel testified at the habeas hearing as follows:

"Q. . . . You've described the defense at the time of trial as basically attempting to evoke sympathy and allow the jury to understand the stresses or pressures that the defendant was under. Is that true?

"A. That's true.

"Q. Is it fair to say that's also a form of a nonstatutory defense?

"A. Well one could say that. It certainly is not recognized as such; in fact, it flies counter to the juror's oath, but obviously in a bad case, if that's all you have, that's all you have."

Given the usual deference courts must afford to trial counsel's decisions when reviewing such claims, we cannot conclude that counsel's failure to request a lesser included offense instruction fell below the reasonably effective assistance of counsel guaranteed by our federal and state constitutions. While the petitioner claims that his ineffective assistance claim relates only to the robbery charge, we cannot review the case as such. The fact that the petitioner also faced an escape charge weighed heavily in the choice of trial tactics. Trial counsel and the petitioner could reasonably have decided, given the state's evidence and the petitioner's reluctance to accept a plea bargain, that any chance of an acquittal on either charge based on juror sympathy had to be premised on maintaining credibility with the jury. Trial counsel's belief that the weakness of the evidence supporting the lesser included offense would have risked that credibility falls within the range of trial strategy that courts may not second-guess upon collateral attack. Even if trial counsel's actions amounted only to a plea for juror sympathy or for a lenient sentence,[10] such a tactical choice has been held not to amount, per se, to ineffective assistance of counsel. See *Darden* v. *Wainwright,* supra, 186. We therefore conclude that the petitioner has failed to demonstrate the deficiency of trial counsel's performance under the first prong of *Strickland.*

Further, even were we to conclude that trial counsel's assistance was so ineffective and flawed as to have deprived the petitioner of "counsel guaranteed by the sixth amendment," the petitioner has not met his burden of proving prejudice under the second prong of

---

[10] The petitioner made a statement to the trial court just before his sentencing emphasizing many of the same factors that he had testified to at trial. He focused on his unemployment, his stress and his use of drugs, as well as the fact that his escape was an impulsive act influenced by his exchange with Judge Kinney.

*Strickland.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* supra, 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id., 695.

The petitioner claims that trial counsel's alleged ineffectiveness prejudiced him in that the jury never considered the issue of whether he committed only larceny rather than robbery. He argues that because he did not himself use physical force, and had not entered into a plan with O'Neil to use force in stealing the money, the jury could reasonably have concluded that he did not have the intent necessary to commit robbery.

The petitioner's argument lacks persuasiveness for at least two reasons. First, the evidence concerning his lack of intent to use force during the incident came only from the petitioner himself.[11] Such self-serving testi-

---

[11] Detective Douglas MacDonald of the New Haven police department did testify that the petitioner, after his escape and return to custody, was upset that he was facing so much prison time because he had planned the episode as a "shoplifting," and only O'Neil had actually used violence. This testimony only duplicates the petitioner's own version of the incident.

mony is not, by itself, sufficient to demonstrate that "the result of the proceeding would have been different." *Strickland* v. *Washington,* supra, 694. Second, assuming that the petitioner had not planned or intended the use of force prior to the incident, as he would have us believe, the jury could still reasonably have returned a guilty verdict for robbery. The petitioner has never disputed that he saw O'Neil hit the clerk with the metal object, rendering him momentarily unconscious. Still, the petitioner tried to open the · cash register as the clerk lay on the floor injured, and continued to participate in the crime as the clerk was ordered to open the register. Thus, regardless of his intent before entering the store, overwhelming and undisputed evidence, on videotape and from the clerk, indicated that the petitioner did not persist in that intent.[12] The petitioner thereby became liable as an accessory: given the events occurring just after O'Neil's use of force, the petitioner certainly intended to aid the principal and also could be found to have had the underlying intent to commit the crime of robbery. See General Statutes § 53a-8; *State* v. *Foster,* 202 Conn. 520, 525–26, 522 A.2d 277 (1987); *State* v. *Vincent,* 194 Conn. 198, 207, 479 A.2d 237 (1984); *State* v. *McCalpine,* 190 Conn. 822, 833–34, 463 A.2d 545 (1983) (*Shea, J.,* concurring). Moreover, despite having spent the evening with him, the petitioner offered no explanation for O'Neil's possession of the metal instrument that O'Neil used to assault the store clerk.

---

[12] The petitioner's counsel on this appeal even admitted at oral argument that the jury could have reasonably so found. In fact, at the habeas hearing, trial counsel testified that the petitioner's failure to withdraw from the crime made it fruitless to pursue a lesser included offense charge. He stated: "[I]t was also clear that he was, during and after the assault, a willing participant in the robbery based upon the videotape so I did not see that we were going to make any points along that line in trying to establish that . . . because there was no evidence of abandonment . . . once . . . he found out that O'Neil had this weapon . . . . "

While the petitioner clings to the possibility that a jury, given the option of a larceny charge, would have chosen to convict him of this lesser offense, on this record we cannot conclude that this possibility was sufficiently realistic to warrant upsetting the guilty judgment. "[A] court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency. Although these factors may actually have entered into counsel's selection of strategies and, to that limited extent, may thus affect the performance inquiry, they are irrelevant to the prejudice inquiry." *Strickland* v. *Washington*, supra, 694–95. We conclude that any possibility that the jury would have convicted the petitioner only of the lesser included larceny charge does not amount to "a probability sufficient to undermine confidence in the outcome." Id., 694.

B

The petitioner also claims that trial counsel's statements to the jury during closing argument deprived him of effective assistance of counsel. During closing argument, trial counsel allegedly told the jury there was not much question on the robbery charge because the petitioner had admitted his involvement in the robbery.[13]

---

[13] We are hampered in our review of this claim in that the petitioner's closing argument at trial was not recorded or transcribed. Trial counsel

The petitioner argues that trial counsel misunderstood the intent required to convict on robbery and that had the jury believed that he did not plan or intend O'Neil's use of force on the clerk, it might have found him not guilty of robbery.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland* v. *Washington,* supra, 697; *Aillon* v. *Meachum,* supra, 362. We need not decide whether trial counsel's statements during closing argument fell below the standard of "reasonably effective assistance" because, as we concluded in part IA above, the petitioner has not sufficiently proven that the alleged deficient performance prejudiced him such that he deserves a new trial. Even if we were to agree with the petitioner that the jury could have believed that he did not anticipate O'Neil's use of force, the overwhelming and uncontradicted evidence regarding the petitioner's actions after O'Neil's attack on the clerk suffice to support a robbery conviction.

## II

Finally, the petitioner claims that the actions of the habeas court at his hearing deprived him of his constitutional right to a fair trial on his claim of ineffective assistance of counsel. U.S. Const., amend. XIV; Conn. Const., art. I, § 8. The petitioner moved to disqualify the judge presiding at his habeas hearing because the judge's "impartiality might reasonably be

---

admitted at the habeas hearing, however, that he may well have stated to the jury that there was not much question on the robbery charge. Thus, for the purposes of this appeal, we will assume the accuracy of the petitioner's representations about his closing argument, as did the habeas court.

questioned due to an apparent personal bias and prejudgment of the case." The habeas court denied the motion and delivered an oral memorandum of decision.

On appeal the petitioner cites six specific comments or actions of the habeas court that he claims deprived him of a fair hearing by creating the appearance of impropriety: (1) stating that the petitioner was not being completely truthful; (2) failing to rule on an objection and interrupting the petitioner's counsel; (3) commenting on the fact that the state was spending three days to afford the petitioner a fair hearing; (4) refusing to allow counsel to speak on the record; (5) acting as a partisan guarding trial counsel's interest; and (6) inquiring of habeas counsel during an in-chambers discussion whether the public defender's office could withdraw from "frivolous" habeas cases. The first four of these actions relate to a heated colloquy during the state's cross-examination of the petitioner regarding certain representations he had made at his trial about a pretrial hearing.[14]

---

[14] In cross-examining the petitioner at the habeas hearing, the prosecutor asked the petitioner whether a portion of his testimony was accurate. The petitioner answered, "Yeah, according to that [transcript], yes." The prosecutor then asked him whether he was implying that the transcript was inaccurate. The colloquy continued as follows:

"Q. I see. So do you disagree with this answer in a certified transcript of your trial? Do you disagree with this answer on page 316?

"A. I don't— it was four years ago.

"Q. Do you disagree with this answer? Yes or no.

"Ms. Pieszak: Objection, Your Honor. Counsel is badgering the witness. I'd like a ruling on my objection.

"Mr. Devlin: Your Honor, I'm asking the witness whether he disagrees—

"Ms. Pieszak: Shouting at the witness—

"The Court: Now just a minute please. Just a minute please calm down. Just calm down.

"Ms. Pieszak: I'm perfectly calm. He's shouting at the witness.

"The Court: Maybe the witness deserved to be shouted at.

"Ms. Pieszak: Your Honor—

"The Court: Maybe the witness is playing a little game with the court which the court will not tolerate. The court has been very patient with the

We agree with the petitioner that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . . " Code of Judicial Conduct 3. C. (1); *State* v. *Fullwood,* 194 Conn. 573, 579, 484 A.2d 435 (1984). At trial " 'the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an "atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." *Glasser* v. *United States,* 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 [1942] . . . .' " *State* v. *Gordon,* 197 Conn. 413, 425, 504 A.2d 1020 (1985), quoting *State* v. *Echols,* 170 Conn. 11, 13, 364 A.2d 225 (1975); see *Quercia* v. *United States,* 289 U.S. 466, 469, 53 S. Ct. 698, 77 L. Ed. 1321 (1933). In whatever

witness, but the witness has a very convenient memory, and the witness is now suggesting that the transcript is incorrect and that there are errors and this is doing the witness no good whatsoever if he wants to establish any credibility with this court so I think he should learn to be a little more responsive and a little more honest with his answers, counselor, and perhaps you'd like to talk to him privately for a couple of minutes, if you wish.

"Ms. Pieszak: I would be happy to take a recess at this moment, Your Honor. However I would like to point out I believe the record will indicate the witness did not say he believed that was inaccurate; he said truthfully, he believes it is possible for a Court Reporter—

"The Court: I don't appreciate this type of game playing.

"Ms. Pieszak: Your Honor—

"The Court: The State of Connecticut is spending three days on this matter and giving this gentleman every possible latitude on his claims, and—

"Ms. Pieszak: Your Honor—

"The Court: I'm trying to be very patient, but I will not tolerate monkey business in this courtroom. Now let's continue with the examination.

"Mr. Devlin: Yes, Your Honor.

"Ms. Pieszak: Your Honor, may I be heard for the record?

"The Court: Regarding what?

"Ms. Pieszak: Regarding Your Honor's comments indicating you believe the defendant is playing some sort of game here. I would like to state for the record I believe those comments are inappropriate. I believe they indicate a lack of impartiality toward my client, and I take exception to those comments.

"The Court: You may take exception."

he does, " 'the trial judge should be cautious and circumspect in his language and conduct.' " *Cameron* v. *Cameron,* 187 Conn. 163, 169, 444 A.2d 915 (1982). "The defendant is entitled to a new trial in such circumstances, however, only where he can show that prejudice resulted from the court's actions. See *State* v. *Echols,* supra, 16." *State* v. *Gordon,* supra, 425. In a jury case, such prejudice may be presumed absent mitigating circumstances. See *State* v. *Echols,* supra, 15–16; see also *State* v. *Gordon,* supra, 425; *State* v. *Grimes,* 154 Conn. 314, 318, 228 A.2d 141 (1966); *LaChase* v. *Sanders,* 142 Conn. 122, 125, 111 A.2d 690 (1955). At a habeas corpus hearing, however, the court sits as the trier of fact, and thus a presumption of prejudice is not warranted. Rather, we presume, absent an affirmative showing to the contrary, that the habeas court can properly put aside whatever impressions he may have about the petitioner and grant him a fair hearing.

While the trial court might have expressed its views with greater circumspection during this heated and frustrating exchange, we conclude that the record does not indicate that the petitioner did not receive a fair hearing. The court did not express any opinion about the ultimate guilt or innocence of the petitioner in this case and instead confined its remarks to the petitioner's apparent memory lapse. The court's comments did not purport to prejudge the ultimate issue in the case: whether the petitioner had received effective assistance of counsel at trial. Absent a clear showing of prejudice relevant to the habeas court's determination of that issue, we will not overturn the court's judgment. See *State* v. *Fullwood,* supra, 581.

As to the remaining claims, we likewise conclude that the petitioner suffered no prejudice. He contends that

the habeas court acted as a partisan in guarding trial counsel's interests at the hearing by advising the respondent's attorney not to waive his right to continue examining trial counsel.[15] Trial counsel, however, had no legal interest of his own in the hearing. On the present record, we have no reason to reject the court's explanation of its comments, namely that in its search for the truth it thought it prudent that trial counsel be able to respond to the petitioner's expert.[16]

Finally, the petitioner contends that the habeas court demonstrated its bias when, during an in-chambers discussion, it inquired of his habeas counsel whether there was a mechanism whereby public defenders could withdraw their appearances from "frivolous" habeas cases. The petitioner argues that this inquiry demonstrates the court's predisposition to view his claim as frivolous. We disagree. Without any evidence that the habeas court's comments were directed to this particular case, we must accept the court's subsequent explanation that it had made a general inquiry to inform itself about the applicable ground rules for other habeas cases the court

---

[15] Although the court's comments were not recorded, the petitioner claims that the respondent's attorney told the judge that he believed he did not need to examine trial counsel further in light of the petitioner's testimony. The habeas court then advised the attorney to reserve the right to recall trial counsel to respond to the petitioner's expert witness, an attorney who would testify that trial counsel's actions fell below the standard of reasonable competence.

[16] In ruling on the petitioner's motion to disqualify, the habeas court stated: "[T]he court sat and listened to what the court considers a very competent attorney, Mr. Avitabile, testify approximately for an hour and fifteen minutes on things that Mr. Kelly either failed to do or should have done differently, and the court felt that in order to search out the truth and to be able to make a proper decision that certainly it would be appropriate to hear from Mr. Kelly. . . . I need all of the opinion and all of the evidence that I can possibly get and that was why I suggested to counsel at the conclusion of the day that it would be appropriate for Mr. Kelly to come back."

might hear in the future.[17] On this record, we cannot conclude that the petitioner was denied a fair hearing.

There is no error.

In this opinion the other justices concurred.

---

[17] The habeas court stated: "[C]ertainly all counsel and the court understand that there was no reference made to this case whatsoever and that the court was making general inquiries as to whether or not the Chief Public Defender's Office had in fact any leeway in taking cases. This was a matter that was not known to the court and since we do habeas work at this courthouse, I was interested in the procedures since I hope to be doing this type of work in the future. . . . I certainly do not regard this as a frivolous case and that was not the intention of the in-chambers conference."