STATE OF CONNECTICUT *v.* THOMAS F. KIRKER, JR.
(AC 16362)
(AC 16866)

Schaller, Hennessy and Spallone, Js.

Argued December 8, 1997—officially released February 10, 1998

*Jeremiah Donovan,* for the appellant (defendant).

*Peter McShane,* assistant state's attorney, with whom, on the brief, were *Kevin T. Kane,* state's attorney, and *Christopher Lasaracina,* certified legal intern, for the appellee (state).

*Opinion*

SPALLONE, J. The defendant, Thomas F. Kirker, Jr., appeals from his conviction of larceny in the first degree and criminal mischief in the first degree and from the resultant judgment of violation of his conditional release.

The jury reasonably could have found the following facts. Dominic Pianka owns property at 615 North Stonington Road in Stonington, consisting of a house and approximately eighty-seven acres of land. Pianka's property is bounded on the north by approximately 180 acres of land owned by Clifford Stimpson. Both Pianka and Stimpson testified that they were familiar with the boundaries of their land. The boundaries were delineated by stone walls. The boundaries were also shown on an aerial map and on the tax assessor's map. The

particular boundary between the Pianka and Stimpson property was indicated by a blue line on the assessor's map.

While walking his property in February, 1995, Pianka discovered that the stone walls were damaged and many of the stones removed from the property. He also observed that hundreds of his trees were damaged or removed from his property. On a subsequent occasion, Pianka discovered and videotaped the defendant working with an individual named Kevin Bialowas who was operating a skidder[1] on Pianka's property.

In the summer of 1994, Stimpson gave the defendant permission to cut and remove firewood from his land. Stimpson provided the defendant with a reduced assessor's map of his property and told him to "stay away from my neighbors." Stimpson had had a previous dispute with another abutting landowner.

The amount of timber sold by the defendant during this period exceeded the amount of timber standing on Stimpson's land. Although Stimpson did not give the defendant permission to remove stones or stone walls, the defendant sold approximately 156 tons of weathered, mossy fieldstone, which was described as "something that was coming off boundary walls." The cost of providing material and labor for the replacement of the missing stone walls on Pianka's property was $56,087 and the value of the timber removed from Pianka's property was $8505.60.

The defendant was charged with larceny in the first degree in violation of General Statutes § 53a-122a (2), conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48 and 53a-122a (2), criminal mischief in the first degree in violation of

[1] A skidder is described as a large vehicle that could operate in forested areas.

General Statutes § 53a-115 (a) (1) and criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1). The case was tried to a jury. At the close of the state's case, the defendant moved for a judgment of acquittal as to all counts. The court granted the motion as to the fourth count, criminal trespass in the first degree.

After both sides rested, the court denied the defendant's subsequent motion for judgment of acquittal. The jury convicted the defendant on count one, larceny in the first degree, and on count three, criminal mischief in the third degree. The jury found the defendant not guilty as to count two, conspiracy to commit larceny in the first degree. As a result of the convictions, the defendant, who was under a conditional release, was found to be in violation of the terms of his release, which resulted in a six month sentence consecutive to that imposed as a result of the present conviction.

The defendant, in his appeal, claims that the trial court improperly (1) admitted into evidence an aerial photograph of the boundary line between the Stimpson and Pianka properties, (2) questioned witnesses to the extent that the defendant was deprived of a fair and impartial trial, and (3) denied the defendant's motion for judgment of acquittal.

In his first claim, the defendant contends that the trial court improperly admitted into evidence the Stonington tax assessor's map of the Pianka property. We find no merit to this claim. Although the defendant offered a general objection to the map's introduction, the map was allowed into evidence for the purpose of indicating where the assessor believed the boundary was, which evidence the jury could weigh and accept or reject when viewed in the light of the evidence as a whole.

The appropriate standard of review in cases concerning the admissibility of evidence is limited to whether

the trial court abused its discretion. See *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987). It is generally accepted that a trial court has broad discretion in ruling on the admissibility of evidence, and appellate courts "will ordinarily not disturb a trial court's ruling on admissibility of evidence unless a clear abuse of discretion is shown." *State* v. *Parker*, 197 Conn. 595, 601, 500 A.2d 551 (1985); see also *State* v. *Napoleon*, 12 Conn. App. 274, 285, 530 A.2d 634, cert. denied, 205 Conn. 809, 532 A.2d 78 (1987). " 'Every reasonable presumption should be given in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. Reversal is required only when an injustice appears to have occurred.' *State* v. *Briggs*, 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980)." *State* v. *Jackson*, 198 Conn. 314, 319, 502 A.2d 865 (1986).

Our Supreme Court has called a map "no more than the pictorial representation of the testimony of the witness through whom it was offered into evidence." *Aczas* v. *Stuart Heights, Inc.*, 154 Conn. 54, 56, 221 A.2d 589 (1966). Any inaccuracies of the exhibit do not raise a question of admissibility, but rather a question of what weight the jury will afford it. See *Sitnik* v. *National Propane Corp.*, 151 Conn. 62, 67, 193 A.2d 503 (1963). The admissibility of a map is similar to the admissibility of a photograph in that the trial court should examine whether the exhibit aids the jury in understanding the evidence. See *State* v. *Dontigney*, 215 Conn. 646, 652, 577 A.2d 1032 (1990). The trial court in ruling on admissibility is concerned with whether the map is relevant and whether it will assist the jury in understanding the testimony.

In addition to illustrating where the assessor believed the boundary was located, the map served as a reference to Pianka and Stimpson who, in their testimony, stated

where their mutual boundary was located. Their testimony did not rely on the map but on their own knowledge of the boundary. "An owner is presumed in law to have knowledge of the boundaries of his own land." *Connecticut Light & Power Co.* v. *Fleetwood*, 124 Conn. 386, 390, 200 A. 334 (1938).

In his second claim, the defendant alleges that the actions of the trial court denied him a fair trial before an impartial judge. Specifically, the defendant claims that the trial court's questioning of the tax assessor, Stimpson and the defendant was improper.

The appropriate standard of review of a trial court's actions is whether the trial court abused its discretion. *State* v. *Smith*, 200 Conn. 544, 548, 512 A.2d 884 (1986). A defendant is entitled to a new trial if the judge's comments are improper and the defendant can demonstrate that prejudice resulted. See *State* v. *Pharr*, 44 Conn. App. 561, 577, 691 A.2d 1081 (1997); *Fair* v. *Warden*, 211 Conn. 398, 414, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989).

The defendant claims that the trial court "interjected itself" into the voir dire of the tax assessor concerning the admissibility of the tax assessor's map and, by doing so, undermined counsel's attempt to "muddy" the testimony. There is no merit to this contention. While the defense strategy may be to obfuscate, a primary function of a criminal trial is to search for the truth. See *State* v. *Morales*, 232 Conn. 707, 723, 657 A.2d 585 (1995). The trial court has a duty to preside at a trial and to take appropriate actions, when necessary, that promote truth at a trial. See *Goggins* v. *Fawcett*, 145 Conn. 709, 713, 147 A.2d 187 (1958). Such actions include bringing out the facts more clearly and bringing out facts to resolve any doubts as to the admissibility of evidence, for example, by questioning a witness. See *State* v. *Fernandez*, 198 Conn. 1, 10–11, 501 A.2d 1195 (1985). The

defendant failed to establish that prejudice resulted from the trial court's questions. See *Fair* v. *Warden*, supra, 211 Conn. 414. The trial court did not abuse its discretion in questioning the tax assessor, where the purpose of such questioning was to clarify (unmuddy) the testimony and to determine what evidence was admissible.

The court did not conduct separate and distinct examinations of the witnesses. The trial court's questions were interspersed in the direct and cross-examination. Such questioning is not reflective of advocacy but is indicative of clarification. Where there is no separate and distinct questioning by the court, counsel has an opportunity to follow up, in context, on a question posed by the trial court without appearing adversarial to the judge.

" 'One of the chief roles of the trial judge is to see that there is no misunderstanding of a witness's testimony. The judge has a duty to comprehend what a witness says as much as it is his duty to see that the witness communicates with the jury in an intelligible manner. A trial judge can do this in a fair and unbiased way. His attempt to do so should not be a basis of error. Where the testimony is confusing or not altogether clear the alleged "jeopardy" to one side caused by the clarification of a witness's statement is certainly outweighed by the desirability of factual understanding. The trial judge should strive toward verdicts of fact rather than verdicts of confusion.' *Ray* v. *United States*, 367 F.2d 258, 261 (8th Cir. 1966), cert. denied, 386 U.S. 913, 87 S. Ct. 863, 17 L. Ed. 2d 785 (1967), quoted in *United States* v. *McColgin*, 535 F.2d 471, 475 (8th Cir.), cert. denied, 429 U.S. 853, 97 S. Ct. 145, 50 L. Ed. 2d 128 (1976)." *State* v. *Bember*, 183 Conn. 394, 402–403, 439 A.2d 387 (1981).

Our review of the record and transcripts indicates that the trial court's questioning of the witnesses was

for the purpose of clarification, both for itself and the jury, and was within the parameters defined by applicable law. Given the facts presented in this case, we cannot say that the trial court abused its discretion in its questioning of the witnesses.

The defendant's final claim, that the court improperly denied his motion for judgment of acquittal on the counts of larceny in the first degree and criminal mischief in the first degree, is unavailing.

A motion for judgment of acquittal must be granted if the evidence would not reasonably permit a guilty finding. Practice Book § 883. In ruling on a motion for judgment of acquittal, the trial court must determine whether a rational trier of fact could find the crime proven beyond a reasonable doubt. *State* v. *Delarosa*, 16 Conn. App. 18, 33, 547 A.2d 47 (1988). Appellate review does not consist of substituting an appellate court's judgment for that of the jury. *State* v. *Almeda*, 211 Conn. 441, 450, 560 A.2d 389 (1989). "If the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury. . . . *Katz* v. *Delohery Hat Co.*, 97 Conn. 665, 679, 118 A. 88 (1922)." (Citation omitted; internal quotation marks omitted.) *Berndston* v. *Annino*, 177 Conn. 41, 43–44, 411 A.2d 36 (1979). The question of whether such evidence *exists* is "a question for the judge; whether that evidence is *sufficient* to establish the fact in controversy is a question for the jury." (Emphasis added.) Id., 44; *Mancini* v. *Bureau of Public Works*, 167 Conn. 189, 200, 355 A.2d 32 (1974).

The record and transcripts clearly indicate the existence of evidence that, if credited by the jury, supports the jury's finding the defendant guilty of the crimes of larceny in the first degree and criminal mischief in the first degree.

In sum, we find that the trial court, in admitting the assessor's map into evidence and in questioning witnesses, acted rationally, lawfully and within the parameters of its discretionary powers. In denying the defendant's motion for judgment of acquittal, the trial court acted in accordance with applicable law.

The judgments are affirmed.

In this opinion the other judges concurred.