[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This habeas petition has been brought by the petitioner, Jerome Parham, claiming ineffective assistance of counsel and that the sentencing court broke the plea agreement. The petitioner has requested that this Court permit him to withdraw his plea on which his convictions were based which would presumably mean a new trial.
The Court, on May 31, 2000, heard testimony from the petitioner and from Thomas Wynne, his counsel at the time of the entering of the pleas and the sentencing. After a review of the transcript of the hearing of March 3, 1997, at which the petitioner entered his pleas and the transcript of the hearing of May 12, 1997, at which hearing the petitioner was sentenced,[1] as well as the testimony of May 31, 2000 and the post hearing brief submitted by the petitioner, the Court finds the following:
1. On or about March 19, 1996, the petitioner was arrested, and on March 3, 1997 in Superior Court in Stamford before Judge James Bingham the petitioner entered an Alford plea to one count of sale of narcotics in violation of CGS Section 21a-277 which resulted in a finding of guilty. Petitioner also pleaded guilty to Failure to Appear in the First Degree, guilty to one count of Public Indecency and guilty to one count of Larceny in the sixth degree. The plea to the Sale of Narcotics may have been to a count of Conspiracy to the Sale of Narcotics, but the end result was the same. The maximum penalty for these charges is fifteen years imprisonment on the Sale (conspiracy) of Narcotics, three months on the Larceny six, six months on the Public Indecency, and five years on the Failure to Appear in the first degree, thereby exposing the petitioner to a total sentence of twenty years and nine months.
2. Negotiations with the State's Attorney resulted in an agreement for a cap of ten years in prison with a right for the petitioner through CT Page 6945 his counsel to argue for a lesser sentence.
3. At the hearing at which the pleas were entered on March 3, 1997, a Pre-Sentence Investigation (PSI) was ordered to be conducted, and the petitioner was released on a written promise to appear on condition that he enter in-patient drug treatment as part of the Liberation program.
4. During the plea negotiations with the States Attorney's Office, the petitioner had rejected any plea offers that would have required incarceration. Eventually, the plea bargain resulted in a cap of ten years with a right to argue for less. It was also understood that the petitioner, during the time between the plea and the sentencing, would enter the aforementioned drug treatment program.
5. On March 3, 1997, Judge Bingham extensively canvassed the petitioner regarding his pleas. The canvas was thorough and similar to guilty canvasses this Court has conducted hundreds of times. Specifically, the petitioner replied in the affirmative to questions such as "Are you satisfied with your lawyer's advice?", that he realized he was giving up the various rights to which he was entitled if he decided not to plead guilty. The petitioner said that he realized he was giving up those rights, and in response to the Court's question, "Any promises been made to you other than the plea negotiation, ten year cap?", the petitioner replied "No". The Court further stated "That means your lawyer has a right to argue down, argue for less, argue for a straight suspended sentence.
 On the other hand, after listening to Mr. Weiss, reading the pre-Sentence Investigation, seeing what your record is in — as you — when you were an inmate, I give you the ten years, you can't withdraw your plea and go to trial as charged; do you understand that?". The petitioner answered "Yes". Judge Bingham also asked him if he understood that he could get a total maximum of twenty years plus nine months as a sentence, to which the petitioner responded in the affirmative. The Court also stated "You realize once the Court accepts your plea, you can't take it back without the permission of the Court?" to which the petitioner responded "Yeah". Further, in response to the Court's question as to whether the petitioner had any questions, the petitioner said "No". The other requirements of the plea canvas were also conducted by Judge Bingham.
6. The petitioner may well have hoped that these questions were merely a formality and that if he completed the drug program successfully, he would probably be given a totally suspended sentence. However, he also was aware that there were no guarantees and that by pleading CT Page 6946 guilty he was exposing himself to a ten year sentence. It is clear from the record there was no commitment by the Court or the state that he could complete the drug program. Attorney Wynne explained to him there were no guarantees and that although completion of the drug program often resulted in a suspended sentence from Judge Bingham, there were no guarantees that that would occur in this case. Attorney Wynne also advised the petitioner that it would probably be difficult to win at trial based upon the fact that, among other things, the petitioner had a long criminal record, and if he testified, at least some of that record would probably be used to impeach his credibility. Further, it was evident from the summary of the facts, that an undercover police officer would be able to testify to the circumstances of the sale and if believed, the defendant would be found guilty.
7. Petitioner was fully informed by his attorney of the exposure that would result from his pleas, and the Court conducted an extensive canvas that made it clear on the record that the petitioner was advised of the potential of ten years incarceration. From the totality of the evidence the Court finds that the petitioner comprehended all relevant information concerning the sentence and was fully aware of the actual value of the commitment made to him by the Court, i.e., a potential for a full ten year sentence. He was not misled as to the actual value of the commitment.
8. The petitioner was in fact sentenced to serve ten years, execution suspended after seven years. This was not a violation of the plea agreement which agreement ultimately left the sentence up to the discretion off the Court except that the Court could not exceed ten years. Accordingly, this Court finds that the plea agreement was not broken by the Court.
9. As to whether or not Attorney Wynne was ineffective in his representation of the petitioner, the Court finds that he was not. In addition to negotiating a cap of ten years which, considering the petitioner's fourteen year criminal record, was a good agreement, Attorney Wynne fully explained to the petitioner all the pros and cons and aspects of pleading guilty and the exposure therefrom as well as the potential of being found guilty after a trial. Further, the Court finds that Attorney Wynne was very eloquent in his efforts to obtain a continuance at the sentencing hearing of May 12, 1997 to allow the petitioner, who was doing well in the drug treatment program, to complete it, in arguing that implicit in the plea agreement was the promise that if the petitioner completed the drug program successfully, it would help him considerably in reducing his sentence.[2] It also became clear from Judge Bingham that he had CT Page 6947 origin planned to sentence the petitioner to nine years, and it was the eloquence of Attorney Wynne and the comments by the petitioner himself that convinced Judge Bingham to reduce the sentence to ten years execution suspended after seven years. It is also clear to this Court that if Attorney Wynne had not bargained for a ten year cap, that Judge Bingham may well have started off with a sentence above the ten years. It is also clear to this Court that Judge Bingham did not believe the petitioner, citing examples of his lying in the past and was very much affected by the petitioner's long criminal history of serious felonies. This Court would note that Attorney Valdes, the assistant state's attorney at the time of sentencing, was also very eloquent, and the fact that Attorney Wynne, despite his eloquence, was not able to reduce the sentence to less than seven years is no reflection on his ability or effectiveness. Judge Bingham had the discretion to do what he did, it was not a violation of the plea agreement, and Attorney Wynne did an excellent job under the circumstances.
10. Further, in order to succeed on a habeas petition, the petitioner must show that absent the claimed errors, the finder of fact, judge or jury, would have had a reasonable doubt as to the petitioner's guilt. Fair v. Warden, 211 Conn. 398, 408 (1989). The petitioner has not shown this.
Although the Court recognizes the petitioner's frustration, the petitioner has not met his burden of proof by a preponderance of the evidence that there was ineffective assistance of counsel or that the plea bargain agreement was broken. Accordingly, the petition for habeas corpus is denied.
Rittenband, J.