## STATE OF CONNECTICUT *v.* KELWOOD WHITE
### (AC 19326)

Lavery, C. J., and Dranginis and O'Connell, Js.

Argued February 15—officially released July 3, 2001

---

[10] We offer no opinion as to whether the defendant may seek, in another proceeding, the relief he requested.

*David B. Rozwaski*, special public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *John Redway*, state's attorney, and *Timothy Liston*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Kelwood White, appeals from the judgment of conviction, rendered after a jury trial, of six counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b)[1] and three counts of sale of narcotics within 1500 feet of a school or public housing project in violation of General Statutes § 21a-278a (b).[2] The defendant claims that (1) the trial court improperly limited his cross-examination of a state's witness and

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . distributes, sells . . . transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ."

[2] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section . . . 21a-278 by . . . distributing, selling . . . dispensing . . . transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school [or] a public housing project . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section . . . 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . ."

(2) there was insufficient evidence to support the conviction of sale of narcotics within 1500 feet of a school. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. From December, 1995, to June, 1996, Detective Richard Batts of the Middletown police department worked in the street crimes unit and investigated illegal drug sales. Batts testified that while working undercover, he had purchased narcotics from the defendant on six separate occasions. On three of the six occasions, the sales took place within 1500 feet of a school or public housing project. On February 8, 1996, two separate sales occurred at different times in the State Terrace parking lot in the Long River Village housing project. On April 11, 1996, a sale occurred on Rogers Road.[3]

On May 4, 1996, after the defendant told Batts that he would have to use an intermediary to purchase drugs in the future, the defendant was arrested on a warrant. The defendant was charged in a substitute information with six counts of sale of narcotics by a person who is not drug-dependent and three counts of sale of narcotics within 1500 feet of a school or public housing project. At the conclusion of evidence, the jury found the defendant guilty on all nine counts, and the court sentenced him to a total effective sentence of sixteen years. This appeal followed. Additional facts and procedural history will be provided as necessary.

I

The defendant first claims that the court improperly restricted his cross-examination of Sergeant Frank Vio-

---

[3] The defendant has always maintained his innocence. His wife testified that he was with her in New Britain on one of the occasions of an alleged sale. The defendant testified that he never met Batts prior to May 4, 1996, when he was arrested. The defendant maintains that he never sold drugs to Batts and that the only reason he was arrested is because of his refusal to cooperate with the police.

lissi of the Middletown police department concerning his bias against the defendant. We disagree. The trial court has wide discretion to determine the relevancy of evidence. *State* v. *Fritz*, 204 Conn. 156, 167, 527 A.2d 1157 (1987). "This discretion arises, however, only after the defendant has been permitted cross-examination and impeachment of a witness sufficient to satisfy the sixth amendment." *State* v. *Colton*, 227 Conn. 231, 248, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). "[A]n important function of cross-examination is the exposure of a witness' motivation in testifying." (Internal quotation marks omitted.) Id., 249, citing *Greene* v. *McElroy*, 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959). "Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." (Internal quotation marks omitted.) *State* v. *Gould*, 241 Conn. 1, 16, 695 A.2d 1022 (1997).

"Although the outright denial of a defendant's opportunity to impeach a witness for motive, bias and interest implicates the constitutional protection of the confrontation clause, such a denial is subject to harmless error analysis." *State* v. *Colton*, supra, 227 Conn. 253, citing *United States* v. *Anderson*, 881 F.2d 1128, 1139 (D.C. Cir. 1989); *State* v. *Santiago*, 224 Conn. 325, 332, 618 A.2d 32 (1992). "Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." (Internal quotation marks omitted.) *State* v. *Colton*, supra, 254.

On appeal, the defendant claims that Violissi was a key witness for the state who may have had a bias against the defendant and that the court improperly restricted inquiry into this potential bias. We disagree. At trial, Violissi testified for the state because he was Batts' supervisor in the street crimes unit. On cross-examination, Violissi stated that he did not direct Batts to make a narcotics purchase from the defendant and did not know the defendant before the time of the purchase. The defendant then asked Violissi: "I don't say this to embarrass, but isn't it true that your daughter became involved," at which point the state objected. The jury was excused. The court stated that it could not yet rule on the objection because it did not know the full extent of the question to be asked.

The defendant then stated, "The offer is that, perhaps, Sergeant Violissi targeted drug dealers who were black because, unfortunately, his daughter became involved with the drug-dealing element and he resented that at Long River Village." The court stated: "I don't know . . . I'm having some—some difficulty in—in following your theory of this. . . . [I]f your claim is that—that either Mr. Violissi or—or some or all of the police in Middletown were—were targeting specific racial or ethnic groups, you know, I—I think that would be—I guess that would be your claim, I'm not sure that's . . . a defense, as such. . . . I'm not sure I'm inclined to let it in. . . . I did allow you to raise the issue when—when Officer Batts testified as to . . . bias and so forth, but . . . I'm not going to allow that question. I think [the states attorney's] objection is well placed. You may have an exception."

In the present case, the court did not improperly restrict the defendant's cross-examination of Violissi. The importance of Violissi's testimony to the prosecution's case was minimal. Batts was the officer who actually purchased narcotics from the defendant and he was the prosecution's main witness. Violissi's testimony

was cumulative and corroborative of the testimony of Batts.

Furthermore, the record also reveals no evidence that raises a reasonable inference that Violissi's daughter became involved in purchasing drugs from an African-American male drug dealer or that because of this alleged activity by his daughter, Violissi became prejudiced against drug dealers in that particular housing complex, and, further, that this alleged bias would cause him to testify falsely against the defendant. Moreover, the defendant did not make any representation to the court that is contained in the record explaining the basis of his knowledge regarding Violissi's daughter's alleged involvement with drugs. The defendant's offer of proof was not adequately developed to be regarded by the trial court as anything but speculation. Accordingly, we conclude that the court's limitation of the defendant's cross-examination for bias, if encroaching at all on his right of confrontation, was harmless beyond a reasonable doubt.

## II

The defendant next claims that there was insufficient evidence to prove that he sold narcotics within 1500 feet of a school. The defendant argues that at no time was any evidence introduced that the transaction actually occurred within the statutory 1500 feet. We disagree.

At trial, Batts testified regarding the April 11, 1996 narcotics purchase. He stated that the map in evidence represented an area that included Rogers Road, Schaeffer Road and Snow School. He also stated that the location where the April 11, 1996 sale occurred was labeled T6 on the map by him.

Robert Dobmeier, assistant chief engineer of the Middletown public works department, also testified that the map was a fair and accurate depiction of the streets, buildings and property lines near Snow School. Dobmeier testified that the map he brought was on file at

the public works department and that it was a topographic map of the area around Snow School. Dobmeier further testified that he drew an arc in red on the map delineating a 1500 foot radius from the northern property line of Snow School. Enclosed in the red arc was Rodgers Road and the area that Batts had labeled T6 as the place where the sale had occurred. The map itself bears the insignia of the city of Middletown, and states that it meets or exceeds national accuracy standards and that it depicts property lines and structures in the area.[4]

The state must prove that the defendant sold the drugs in a location that is within 1500 feet of a school. See *State* v. *Knight*, 56 Conn. App. 845, 850, 747 A.2d 13 (2000). "In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994). "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Carpenter*, 214 Conn. 77, 79, 570 A.2d 203 (1990). "The scope of our factual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

---

[4] The defendant objected to the map because it was not certified by a surveyor, and he cross-examined the assistant city engineer at length concerning horizontal, vertical and topographical accuracy.

could have found the essential elements of the crime beyond a reasonable doubt. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 510–11, 668 A.2d 1288 (1995).

"Our Supreme Court has called a map no more than the pictorial representation of the testimony of the witness through whom it was offered into evidence. . . . Any inaccuracies of the exhibit do not raise a question of admissibility, but rather a question of what weight the jury will afford it. . . . The admissibility of a map is similar to the admissibility of a photograph in that the trial court should examine whether the exhibit aids the jury in understanding the evidence. . . . The trial court in ruling on admissibility is concerned with whether the map is relevant and whether it will assist the jury in understanding the testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Kirker*, 47 Conn. App. 612, 616, 707 A.2d 303, cert. denied, 244 Conn. 914, 713 A.2d 831 (1998).

The evidence in the record shows that the map used to establish the area where the narcotics were exchanged was a reasonable representation of the location and that this area was within 1500 feet of a school. On the map, the T6 label, and the entire length of Rogers Road itself, is approximately halfway between the school property line and the 1500 foot red radius mark. Although Batts never was specifically asked whether the transaction occurred within 1500 feet of the school, the map itself has the marking T6 made by Batts that shows the general location of the exchange, and this

mark is approximately halfway between the 1500 foot line and Snow School. Moreover, according to the map admitted into evidence, virtually the entire street, Rogers Road, falls within 1500 feet of a school zone, and the spot labeled T6 by Batts is halfway between the 1500 foot line and Snow School.

The map, along with the testimony of Batts and Dobmeier, was sufficient to aid the jury in concluding that the sale occurred within 1500 feet of a school. The map was relevant and assisted the jury in understanding the testimony. Therefore, we conclude, after viewing the evidence in the light most favorable to sustaining the verdict, that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Upon the facts so construed and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.