[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, Anthony Johnson, alleges in his Amended Petition that he was denied the effective assistance of counsel under the Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 8 of the Connecticut Constitution. The alleged ineffective assistance of counsel resulted, according to the petitioner, in his entering under Alford[1] a guilty plea to assault in the first degree that was not knowing, intelligent and voluntary. Consequently, the petitioner claims that his conviction and incarceration are illegal.
The petitioner brings forth two claims: 1) that at the time of his plea, the petitioner thought he was pleading guilty to assault in the second degree, § 53a-60; and 2) that his trial counsel, Attorney Gerald M. Klein, failed to ensure that the petitioner's Alford plea to assault in the first degree was knowingly and intelligently made and that there was a factual basis to support the plea.[2] Petitioner's Amended Petition at 2. These failures by Attorney Klein "fell below the range of CT Page 7775 competence displayed by lawyers with ordinary training and skill in the criminal law; and there is a reasonable probability that but for Attorney Klein's failures, the result of the proceedings would have been different." Id.
After a trial on the merits, during which the Court heard testimony from the petitioner as well as his former counsel, the Court concludes that the claims raised by the petitioner are without merit. The petition for a writ of habeas corpus, therefore, is denied.
 INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD
"What constitutes effective assistance of counsel cannot be determined with yardstick precision, but necessarily varies according to the unique circumstances of each representation. The habeas court may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." (Internal citation omitted.) Beasleyv. Commissioner of Correction, 47 Conn. App. 253, 264, 704 A.2d 807
(1997), cert. denied, 243 Conn. 967, 707 A.2d 1268 (1998).
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction has two components. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that the deficient performance prejudiced the defense. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Stricklandv. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989); Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981,110 S.Ct. 512, 107 L.Ed.2d 514 (1989)." Henry v. Commissioner of Correction,60 Conn. App. 313, 316-7, ___ A.2d ___ (2000).
"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. In Strickland, the United States Supreme Court held that judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a petitioner to second guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense, after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to CT Page 7776 counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment.
"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In the context of a guilty plea, our Supreme Court has stated [that] the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence for the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. The United States Supreme Court stated that in many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Emphasis in original.) (Internal citations and quotations omitted.) Id., 317-9.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v.CT Page 7777Commissioner, 234 Conn. 139, 151, 662 A.2d 718 (1995).
"In Hill v. Lockhart, the court determined that the same two-part standard applies to claims arising from the plea negotiation process and that the same justifications for imposing the prejudice requirement inStrickland were relevant in the context of guilty pleas. Although the first half of the Strickland test remains the same for determining ineffective assistance of counsel at the plea negotiation stage, the court modified the prejudice standard. As in Strickland, the prejudice standard for plea negotiations is intended to determine whether, but for counsel's constitutionally deficient performance, the outcome of the plea process would have been different. The court went on to require that in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.
"The Hill court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. The court stated that in many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Internal citations and quotations omitted.) Id., 156-7.
"A reviewing court can find against the petitioner on whichever [Strickland prong] is easier. Valeriano v. Bronson, 209 Conn. 75, 85-6,546 A.2d 1380 (1988); Nardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69
(1988); Magnotti v. Meachum, 22 Conn. App. 669, 674, 579 A.2d 553
(1990); Beasley v. Commissioner of Correction, [supra, 47 Conn. App. 2641."Petaway v. Commissioner of Correction, 49 Conn. App. 75, 76 n. 2,712 A.2d 992 (1998).
 FACTUAL FINDINGS
CT Page 7778
The record of this case indicates the following facts; additional facts will be addressed as necessary in following sections. The petitioner was arrested on October 17, 1989, on a warrant for charges of one count of assault 2nd in violation of C.G.S. § 53a-60 and one count of risk of injury to a minor in violation of C.G.S. § 53-21. Petitioner's Exhibit A.
The charges stemmed from first and second degree burns to the feet of a five-year-old minor, the son of a former girlfriend of the petitioner, as a result of the petitioner placing the boy into a tub of scalding hot water. The victim indicated to medical personnel and the police that the petitioner had placed him in the scalding hot water to teach him a lesson, to inflict some sort of punishment for something the boy apparently had done. The victim was struck by the petitioner on the back and buttocks with a cord after getting out of the scalding hot water, and then made to get back into the water a second time. The victim also suffered a small laceration on the buttocks, which the victim indicated was inflicted upon him by the petitioner striking him on the buttocks with a knife. Petitioner's Exhibit B (Dec. 6, 1990 Tr. at 9-10).
In October of 1989, Attorney Gerald M. Klein was retained to represent the petitioner in cases pending in G.A. 14 in Hartford, as well as in G.A. 15 in New Britain.[3] At that time the State's offer in G.A. 15 for the violation of C.G.S. § 21a-277a was fifteen years in prison with execution suspended after eight years to run consecutive to the five years that the petitioner faced on federal parole. Petitioner's Exhibit G (Oct. 26, 1989 Letter). Attorney Klein indicated to the petitioner that the prosecutor in the New Britain case was extremely tough, that it was unlikely that that prosecutor would reduce the offer, and that Attorney Klein would "have to file motions and make it look like we are going to trial, and maybe the judge will reduce the offer on some future court date." Id.
On November 15, 1989, pleas of "not guilty" were entered on the assault 2nd and risk of injury counts. In correspondence from Attorney Klein to his client, however, it was indicated that "[t]here has been a drastic change of circumstances in [this case]. The mother and the child who are the complainants in your Risk of Injury case were present in court today. They told the prosecutor that they want you to `go to jail and have them throw away the key.' The prosecutor indicated that he wants to see how much time you get in New Britain. . . . Unfortunately, it appears that the case in Hartford may end up being a jury trial even if the case in New Britain is settled by a plea bargain. . . . The current offers of more than 15 years to run consecutive to your federal time should clearly be unacceptable to you, especially if you claim you are innocent of the risk of injury charges in Hartford." Petitioner's Exhibit CT Page 7779 H (Nov. 15, 1989 Letter).
The petitioner's case in Hartford was transferred to Part A on January 4, 1990, and continued to January 16, 1990. Petitioner's Exhibit A. Attorney Klein subsequently corresponded with the petitioner on January 19, 1990, informing his client that the Hartford matters had been continued to February 6, 1990. "I spoke with to your sister, and she wants you to tell me what, if anything, you want me to do on your behalf. If you want to claim an alibi defense on any of these matters, you have to let the State know within ten days. Please let me know in writing if you wish to put forth an alibi in any of these three files." Petitioner's Exhibit I (Jan. 19, 1990 Letter).
On March 5, 1990, Attorney Klein advised his client that "Judge Norko indicated today that he would impose a 12 year sentence for the above three pending criminal cases in Part A of the Superior Court in Hartford, and also, for your pending drug case in New Britain. The judge indicated that he would bring the New Britain case to Hartford for purposes of a joint disposition of all four pending criminal matters. There was no discussion with the judge as to whether or not this 12 year sentence would run concurrent or consecutive to your federal parole time that you owe." (Emphasis in original.) Petitioner's Exhibit J (Mar. 5, 1990 Letter).
Attorney Klein then informed the petitioner that he had spoken with the public defender in New Britain that same day, March 5, 1990. The public defender had informed him "that the offer previously was seven years just for that case but has recently been increased to 12 years just for that case. If you honestly felt you would get 12 years for that case, then I suppose it would make sense to get 12 years for a total package. You informed me that this was far too much time, and you wanted to deal with these cases separately. This is fine with me, but I simply want to let you know that your cases in Part A have been placed on the firm trial list at this time. Your case in New Britain will be either settled or tried long before your cases in Hartford come up for jury trial. My advice to you is that you try to resolve the New Britain drug case as best you can without giving the Hartford cases any thought at all. These cases where I represent you will have to be dealt with when they are assigned for trial. I have informed Judge Norko of your decision, and all pre-trial offers were withdrawn." Id.
On December 6, 1990, the prior pleas were withdrawn and pleas of "guilty" under Alford were entered to a substitute information alleging one count of assault 1st in violation of C.G.S. § 53a-59(a)(1) and one count of risk of injury to a minor in violation of C.G.S. § 53-21. Petitioner's Exhibit A. The transcript of that proceeding indicates that CT Page 7780 Attorney Klein had explained the status of the plea negotiations to his client prior to the pleas and elections being withdrawn. Petitioner's Exhibit B (Dec. 6, 1990 Tr.) at 1. The guilty pleas were entered into "based on the assumption that the mother and the child are still in the vicinity, and available to testify." Id. The recommended sentence for the Part A files was sixteen years, to run concurrently with the drug sentence. Additionally, the petitioner waived his right to a presentence investigation. Id.
The plea transcript further indicates the following:
 MR. KLEIN: . . . I know that the State indicated she hadn't had recent contact with [the mother and the child], but they were here for Court dates in the past, and I've heard nothing from the defendant or anyone else that indicates they're not around.
 THE COURT: I'm assuming that the victims are around, but let's assume that he pleads. I'll give him 12/21 for victim notification. No PSI will be ordered. Let's assume Probation sends a letter out, and they say, "We sent a letter out, but the victim has not contacted us by phone." Your client's not going to withdraw his plea.
 What your client has to decide to do now is. if he wishes to plead guilty today, for 16 years concurrent, under the assumption — and if I'm — and if I prove wrong down the road as far as the credits are concerned, I'll still give him the 16 years concurrent. But if your client feels the victims are not in the area any more, and he wants to roll the dice and start picking a jury, and if they are not in the area, he wins. If they are in the area, he gets 25 or 30 years. So, I want to make it clear now that if in fact victim notification, they come back and say, "We've tried to contact the victim, and we've had no response from them," your client's not going to move to withdraw his plea, because at — if that's his aim, I'm not going to take his plea.
 MR. KLEIN: Well, I — no, that's not his aim. These are my statements, not his. And I think the Court may have misconstrued this.
THE COURT: . . . I don't want to get into the thing CT Page 7781 whether a victim's here or not. I'm going to assume the victims are here.
 THE COURT: I just don't want to run into a problem, Mr. Klein, that if they do contact [the victim and his mother] — and do you want to have one of your inspectors contact them?
MS. CREAMER: I can do that, Your Honor.
 THE COURT: OK. I mean if in fact, they're living — they're still living in the area, and they don't want to say anything about the case, that's not going to affect your —
 MR. KLEIN: Well, we've discussed all those possibilities. And I told my client that these are people who were in Court to make sure he was adequately prosecuted, not to come to his defense, as is the case in some of these matters. So — all right.
 THE COURT: Oh, yeah. Oh yeah, OK, let's put him to plea, with notification to the victim by (Friday, December 20th, 1990].[4]
The petitioner then was put to plea on one count of assault in the first degree, to which he pled guilty, as well as the counts of risk of injury to a minor and possession of narcotics with intent to sell, which also resulted in guilty pleas.[5] Id., at 4-5.
The Court (Damiani, J.) then canvassed the petitioner as follows:
 THE COURT: And you've had enough time to talk to your lawyer about this case and your decision to plead guilty?
THE DEFENDANT: Yes.
 THE COURT: He's explained to you the elements of the offenses to which you have pled, and also the evidence the State would have presented at trial, Sir?
THE DEFENDANT: Yes.
THE COURT: You've pled to a charge of Assault in theCT Page 7782 First Degree, a Class B Felony. You could get 20 years in jail, and/or a $10,000 fine, of which five years cannot be reduced or suspended by me. And you commit that crime when, with intent to cause a serious physical injury to another person, you cause that injury to that person, by means of a dangerous instrumentality.
. . .
 Therefore, you could have gotten, on these three counts, 45 years in jail, and/or a fine of $60,500, of which five years could not be reduced or suspended by me. Do you understand that, Sir?
THE DEFENDANT: Yes.[6]
 THE COURT: Now, you're not on probation or parole, but you are doing a sentence now, out of New Britain, 15 after 8, you got.
 The sentence I've talked about here, the maximum, 45 years, could be made to run consecutive to that. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: Has anyone forced or threatened you to plead guilty?
THE DEFENDANT: No.
 THE COURT: No, the agreed-upon recommendation here is 16 years, to run concurrently — together — with the 15, suspended after 8. Do you understand that?
THE DEFENDANT: Yes.
 THE COURT: Has anyone promised you anything else for this case, other than that you would be getting 16 years, concurrent?
THE DEFENDANT: No.[7]
THE COURT: As far as the Assault and the Risk of CT Page 7783 Injury cases, you pled Alford. You entered your plea to accept the recommendation by the State, rather than go to trial. And secondly, if the case had gone to trial, it would have been more probable than not you would have been convicted; do you understand that, Sir?
THE DEFENDANT: Yes.
 THE COURT: Have you understood all my questions, Sir? Everything I've asked you, you've understood?
THE DEFENDANT: So far, yes.
 THE COURT: I'm not going to ask you anything else. Mr. Klein, are you satisfied that your client's plea is being made voluntarily, and being understandingly made?
MR. KLEIN: Yes.
THE COURT: Is there any reason I should not accept it?
MR. KLEIN: No. I know of none.
 THE COURT: Does the State know of any reason why I shouldn't accept the plea?
MS. CREAMER: No, Your Honor.
 THE COURT: The plea is found to be voluntarily and understandingly made, with the assistance of competent counsel. A factual basis for same exists; accepted. A finding of guilty is made.[8]
 The petitioner was sentenced on December 20, 1990. After a brief summary of the pretrial procedural history, the following discussion transpired:
MS. CREAMER: . . . I think I should point out to the Court that the victim of the assault in the first degree and a risk of injury of a minor, rather the mother of the victim was present this morning, but at our office, and earlier in the courtroom. I don't see her now. . . . [S]he did wish to express her dissatisfaction with the agreed upon sentence and I CT Page 7784 told her that I would communicate that to the Court. What she told me was that she was not satisfied with the 16 years suspended sentence[.][9]
. . .
 The reason that she said that she was dissatisfied with it; that her son has badly scarred feet and legs as a result of the scalding that was inflicted on him by the defendant and she also stated that he is emotionally scarred as well, and that he is still talking about the injury which is now more than a year and a half ago, so I told her I would communicate that too. She did not think it was enough for what this defendant did.
 MR. KLEIN: I'm still asking that the Court accept the agreed upon recommendation.
 THE COURT: Okay. It then is for the record that he is facing a possible 20 years, 30 years on assault one and risk of injury. . . . The sentence in number one would have home release sentence as opposed to the 16 years that he is getting here on assault one, which is non-home release sentence, so that the 16 years will be a real 16 years. Mr. Klein?
MR. KLEIN: . . . He knows that there were prior offers in this case that perhaps at a time when I truly believe — this is the case when the State did not have access to or someone just didn't really look at the photographs or gather the evidence all in one place to sit down and analyze this file; he was exposed to 35 years. I went in front of Judge Miano on a jury trial day when it was seen for trial prior to offers being rewritten giving 35 years on that file plus two on the other files, one of which was relatively serious. They then wanted to change his election to a court trial and as the court indicated during that period of time — we did have another discussion again with this Court. I believe at that time it was the first time that this Court obviously had seen some of the evidence that the State had put forward in terms of the photographs and it was retried again as the Court indicated. I expressed, I think, some concern or at least perhaps a rhetorical question CT Page 7785 at the time of plea when we were doing this — a summation that the victim still stood ready, willing and able to testify. The Court indicated to Mr. Johnson that he would have to take this and plead on this as it turns out, based upon what the State attorney represented. In fact, the mother was here that day and the child apparently was suffering seriously still, at the time. It was available for them.
 I think all things considered, the Alford plea that he entered was probably the right decision and I also am asking the Court to accept it. Not withstanding the — understandably the negative complaints by the mother of the young man.
THE COURT: Do you want to say something, sir?
THE DEFENDANT: No, Your Honor.
 THE COURT: Okay. Based upon what I recall from the pre-trial there is nothing that I can do because a decision was made to accept the plea agreement. It's fair and reasonable under all circumstances. On assault in the first degree, you're committed to the custody and care of the Commission of Corrections for a period of 16 years.[10]
Subsequent to the sentencing, Attorney Klein again corresponded with his client. "Judge Damiani sentenced you to a total effective sentence of 16 years to serve to run concurrent to your present sentence. As I have mentioned to you before, I think you did the right thing by pleading guilty, because if you had been convicted after trial, you would have received a much longer sentence. The victim's mother did show up in court[at sentencing], and they would have testified if the case went totrial." (Emphasis added.) Petitioner's Exhibit K (Dec. 20, 1990 Letter).
 ERRANT GUILTY PLEA TO ASSAULT IN THE FIRST DEGREE
The petitioner claims that at the time of his plea, he thought that he was pleading guilty to assault in the second degree. The petitioner's Pre-Trial Brief argues that "the Petitioner expects to adduce testimony that he would not have entered a guilty plea to the assault charge if he had been aware that it was a first degree, rather than a second degree assault. Rather, he would have proceeded to trial and relied upon his defense that the burns to the child were accidental, and that he did not CT Page 7786 cause any other injury." Pet. Pre-Trial Brief at 2.
In support of the ineffective assistance claims, "the Petitioner expects to adduce evidence that he was not adequately advised by his attorney of the change in the charge, and that his attorney failed to investigate the factual background of the case. This failure to investigate the background of the case disadvantaged the Petitioner, and influenced his decision to enter a plea of guilty." Id., at 2 n. 2.
The petitioner admits that the canvassing Court clerk read the charge of assault in the first degree to the petitioner. The petitioner also admits that the canvassing judge reviewed the elements of the offense. However, the prosecuting attorney's recitation of the factual basis for the assault charge contained no reference to the degree of assault that was charged.[11] Id., at 5.
Attorney Klein allegedly failed to investigate the defense evidence and failed to interview the petitioner in a timely manner, which resulted in Attorney Klein not being aware of the defense of "accident" to be offered at trial. Id. In addition to this unawareness affecting Attorney Klein, the petitioner alleges that he was "distraught" on the day he entered his plea. "As a result of his mental state, and counsel's failure to address the issue of the changed charge, at the time he decided to enter his plea, the Petitioner was not aware that the assault charge would be increased to assault in the first degree. He also failed to realize during the plea canvass that the assault charge had been changed. Attorney Klein did not ensure that the Petitioner knew and understood the nature of the assault charge." Id.
Lastly, the petitioner indicates that "prior to the incident involving the bath water, he was aware that the child's mother had given evidence to support a criminal charge against another individual because she [had] been intimidated by the threat that she could lose custody of her child. This prior experience provided a motive for the mother to urge she was not responsible for any injuries observed on the child at the hospital, and to cast blame on the Petitioner, who was the adult responsible for the child at the time he was burned." Id., at 6.
At the habeas corpus trial, the petitioner testified on cross examination that he never told Attorney Klein that he was innocent or that he had defenses to the case. Additionally, the petitioner testified that every time he went to court, he talked briefly with Attorney Klein. Attorney Klein saw the petitioner in the "bullpen" and spoke with his client there. Attorney Klein would follow up these court dates with letters. CT Page 7787
On direct examination regarding the events of December 6, 1990, the date of the plea change, the petitioner could not recall if Attorney Klein told him that the charge had been changed. After discussing all the charges pending against the petitioner, including two failure to appear charges that were also pending, and the potential terms of incarceration, the petitioner became upset and cried. At this point in the plea negotiations, according to the petitioner's testimony, Attorney Klein again spoke with the prosecutor and came back with an offer of sixteen years, which the petitioner accepted.
The Court also heard testimony from the petitioner that he was not paying much attention in court when he withdrew his "not guilty" pleas and entered the Alford guilty pleas. Nevertheless, the petitioner remembered the canvassing Court asking him questions. It is only after he was in prison following the sentencing, according to the petitioner, that he discovered that he had been convicted of assault in the first degree.
On direct examination, Attorney Klein testified that he discussed with the petitioner the evidence that the State had against his then client. Attorney Klein also testified that his client's family was present and in the courtroom on December 6, 1990, and that they urged him to take the State's offer of sixteen years.
"All of the circumstances surrounding the entry of the guilty plea in court should be considered in determining the voluntariness of the plea. The presence of counsel at the time when the plea of guilty was entered militates strongly against a conclusion that the plea was involuntary." (Internal citations omitted.) Williams v. Reincke, 157 Conn. 143, 148,249 A.2d 252 (1968).
Upon review of the canvass the petitioner received, as well as the testimony by both the petitioner and his former counsel, this Court finds that the petitioner's claim that he did not know he was pleading to assault in the first degree to be not credible. The charge of assault in the first degree was specifically referenced three times during the change of plea proceeding.[12] The second reference is especially illustrative:
THE COURT: You've pled to a charge of Assault in the First Degree, a Class B Felony. You could get 20 years in jail, and/or a $10,000 fine, of which five years cannot be reduced or suspended by me. And you commit that crime when, with intent to cause a serious physical injury to another person, you cause that injury to that person, by means of a dangerous instrumentality. CT Page 7788
. . .
 Therefore, you could have gotten, on these three counts, 45 years in jail, and/or a fine of $60,500, of which five years could not be reduced or suspended by me. Do you understand that, Sir?
THE DEFENDANT: Yes.[13]
In addition to the canvass on December 6, 1990, the specific charge of assault in the first degree was mentioned four times at the sentencingtwo weeks later on December 20, 1990. Dec. 20, 1990 Tr. at 2, 3 and 5.
The record in this case is entirely void of any indication that the petitioner did not understand he was voluntarily pleading to assault in the first degree. To the contrary: the record is replete with evidence that the petitioner knowingly, voluntarily, intelligently, and with the effective assistance of counsel entered an Alford guilty plea to assault in the first degree. "Timely objection serves to avoid prejudicial error by permitting the trial court and the prosecutor to reconsider and perhaps change their courses of conduct while that is still possible."State v. Garvin, 43 Conn. App. 142, 159, 682 A.2d 562 (1996), aff'd.,242 Conn. 296, 699 A.2d 921 (1997). In this case, there was no objection by the petitioner during the change of plea, at sentencing, or the two-week span between these two events.
"The record is therefore persuasive that the [petitioner] in fact harbored no misunderstanding about the terms of the original plea agreement. With notice of the terms of the agreement, the [petitioner] entered his plea knowingly and in compliance with the requirements of due process and fundamental fairness." State v. Garvin, 242 Conn. 296, 313,699 A.2d 921 (1997).
What the petitioner is asking this Court to find regarding the first habeas corpus claim is that in spite of multiple specific references to assault in the first degree, there being complete assent to the proceedings by the petitioner with not a shred of evidence that he misunderstood the charge and potential maximum term, and there being no evidence that the petitioner attempted to withdraw his guilty plea prior to sentencing, that his counsel rendered ineffective assistance. This Court is unable to do so given the facts of this case.
The Court finds that the petitioner has failed to demonstrate that his counsel's performance was deficient. Thus, the first prong of theStrickland test is not satisfied and the claim of errant guilty plea to CT Page 7789 assault in the first degree is without merit.
 LACK OF FACTUAL BASIS FOR ALFORD GUILTY PLEA TO ASSAULT IN THE FIRST DEGREE
The petitioner's second claim alleges that his guilty plea underAlford to assault in the first degree was not knowingly, intelligently and voluntarily entered. Because a guilty plea under Alford does not include an admission of guilt, according to the petitioner, there was never an admission by the petitioner to the offense as charged, namely assault in the first degree in violation of C.G.S. §53a-59(a)(1).[14] Additionally, the petitioner claims that he had no real notice of the true nature of the charge against him because he was not formally charged with assault in the first degree until the plea canvass was underway. "The substitute short-form information charging assault in the first degree was filed the very day of the plea. The Petitioner's decision to enter his plea occurred outside the courtroom, before the new information was read to him. It was not until he appeared in the courtroom to enter his plea that he was even read the name of the charge." Petitioner's Pre-Trial Brief at 11.
The petitioner also argues that "critical to the inquiry before the [habeas] court is the fact that the Petitioner could have been convicted of assault in the second degree for recklessly causing serious physical injury with a dangerous instrument. C.G.S. § 53a-60(a)(3).[15] The Petitioner never disputed that the child was injured while the Petitioner was responsible for his care and supervision. The failure to supervise the child properly, and the failure to realize that burns could result from bath water would have been sufficient to support a guilty verdict on assault in the second degree. The calculation of the likelihood of conviction of an intentional assault is entirely different." (Emphasis in original.) Id., at 12.
The petitioner relies on a series of United States Supreme Court decisions for support of the argument that the petitioner's Alford plea was not knowing, intelligent and voluntary. A careful review of the cases relied upon by the petitioner leads this Court to the conclusion that the facts of this case are distinguishable from those relied upon.
The first case the petitioner relies upon is Smith v. O'Grady,312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941). In Smith, the petitioner was not informed of the charges against him; deceived into pleading guilty to a charge different from what he was told he was arrested on; prevented from obtaining a copy of the charges filed against him; summarily arraigned and immediately sentenced based upon the guilty plea the petitioner had been tricked into; upon protestation of the sentence CT Page 7790 imposed and after a repeated request of the charge, again denied a copy of the charge; and upon petitioner's request to withdraw his guilty plea and a request that an attorney be appointed to assist him, denied all such requests put to the court. Id., at 332-3.
The Supreme Court, after stating that the habeas "petition presents a picture of a defendant, without counsel, bewildered by court processes strange and unfamiliar to him, and inveigled by false statements of state law enforcement officers into entering a plea of guilty," held that the petitioner "had been denied any real notice of the true nature of the charge against him." Id., at 334. Quite clearly, the facts of the habeas case before this Court could not be further removed from those in Smith.
The petitioner in this case had counsel who played an instrumental and vital role in negotiating a plea agreement which encompassed two cases and several charges. The petitioner actively participated in the entire process, from start to finish, from October, 1989, when counsel was first retained, to December, 1990. As the previously-discussed correspondence and transcripts evidence, the petitioner spent fourteen months working through his attorney to arrive at a plea agreement. There is not a scintilla of evidence in this case, contrary to Smith, to support the claim that the petitioner was confused, distraught, or duped into pleading guilty to assault in the first degree.
In Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108
(1976), the question presented was "whether a defendant may enter a voluntary plea of guilty to a charge of second-degree murder without being informed that intent to cause the death of his victim was an element of the offense." Id., at 638. In fact, the defendant inHenderson never had the elements of the offense he pled guilty to explained to him by the court, Id., at 642-3, resulting in the defendant pleading guilty to a charge that was never formally made. Id., at 645. The record in this case indicates that Judge Damiani specifically included the element of "intent" in the description of the assault in the first degree charge. Dec. 6, 1990 Tr. at 6. The petitioner's reliance onHenderson is misplaced.
The petitioner's reliance upon Boykin v. Alabama, 395 U.S. 238,89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), is also erroneous. In Boykin, the petitioner pleaded guilty to five indictments. "So far as the record shows, the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court. Trial strategy may of course make a plea of guilty seem the desirable course. But the record is wholly silent on that point and throws no light on it." Id., at 239-40. The record in this case underscores, if anything, that both the canvassing and sentencing courts appropriately informed the petitioner of the charge CT Page 7791 of assault in the first degree, that the petitioner knew the degree of assault he was pleading guilty to, and that the petitioner completely understood the proceedings.
The resolution of the petitioner's pending matters via the plea agreement in this case resulted in a sentence of sixteen years — instead of a potential maximum of forty-five years — to be served concurrently — instead of consecutively — to the fifteen years suspended after eight years the petitioner was sentenced for in another matter.[16] The plea of guilty entered in this case clearly seems to have been the desirable course.
The final U.S. Supreme Court decision relied upon by the petitioner isMcCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418
(1969). That decision was "based solely upon our construction of Rule 11 [of the Federal Rules of Criminal Procedure] and is made pursuant to our supervisory power over the lower federal courts; we do not reach any of the constitutional arguments petitioner urges as additional grounds for reversal." Id., 464.
The Supreme Court went on to discuss the "two purposes of Rule 11 and the reasons for its recent amendment. First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.
"Prior to the 1966 amendment, however, not all district judges personally interrogated defendants before accepting their guilty pleas. With an awareness of the confusion over the Rule's requirements in this respect, the draftsmen amended it to add a provision "expressly requiring the court to address the defendant personally.' This clarification of the judge's responsibilities quite obviously furthers both of the Rule's purposes. By personally interrogating the defendant, not only will the judge be better able to ascertain the plea's voluntariness, but he also will develop a more complete record to support his determination in a subsequent postconviction attack.
"These two purposes have their genesis in the nature of a guilty plea. A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory CT Page 7792 self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege.' Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.
"Thus, in addition to directing the judge to inquire into the defendant's understanding of the nature of the charge and the consequences of his plea, Rule 11 also requires the judge to satisfy himself that there is a factual basis for the plea. The judge must determine "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.' Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'
"To the extent that the district judge thus exposes the defendant's state of mind on the record through personal interrogation, he not only facilitates his own determination of a guilty plea's voluntariness, but he also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary. Both of these goals are undermined in proportion to the degree the district judge resorts to "assumptions' not based upon recorded responses to his inquiries." (Internal citation omitted.) Id., 465-7.
This Court cannot find a single assumption made by Judge Damiani during the underlying proceedings that is not based upon recorded responses to his inquiries. Again, the record in this case is replete with nothing but informed, knowledgeable and knowing assent by the petitioner to pleading guilty under Alford to assault in the first degree.
The last aspect of the petitioner's claim is that there was no factual basis for the guilty plea to assault in the first degree, that offense requiring intent to cause serious physical injury to another person. The petitioner admits that the facts of this case "would have been sufficient to support a guilty verdict on assault in the second degree," an offense that only requires recklessness instead of intent. Petitioner's Pre-Trial Brief at 12. The petitioner argues that the likely conviction for assault in the second degree is "critical to the inquiry before the [habeas] CT Page 7793 court." Id. The petitioner then acknowledges that he never disputed that the child was injured while he was responsible for the child's care and supervision. "The failure to supervise the child properly, and the failure to realize that burns could result from bath water would have been sufficient to support a guilty verdict on assault in the second degree." Id.
In Paulsen v. Manson, 203 Conn. 484, 491, 525 A.2d 1315 (1987), the Court overruled State v. Eason, 192 Conn. 37, 470 A.2d 688 (1984), Statev. Cutler, 180 Conn. 702, 433 A.2d 988 (1980), State v. Marra,174 Conn. 338, 387 A.2d 550 (1978), and State v. Battle, 170 Conn. 469,365 A.2d 1100 (1976), to the extent that those cases held that "a plea not supported by an adequate factual basis is obtained in violation of due process and is, therefore, void."
The Paulsen Court remanded the case so that a determination could be made as to whether the petitioner, when stating at his plea that he had an "opportunity to discuss the offense with his attorney. . . . was thereby referring to an explanation by his counsel of the elements of assault in the first degree." Paulsen v. Manson, supra, 203 Conn. 493-4.
The petitioner in this case specifically responded in the affirmative when questioned by the canvassing Court as to whether counsel had explained the elements of the offenses to which the petitioner had pled guilty. Dec. 6, 1990 Tr. at 6. Immediately after this affirmative response, the canvassing Court stated the following to the petitioner: "You've pled to a charge of Assault in the First Degree, a Class B Felony. You could get 20 years in jail, and/or a $10,000 fine, of which five years cannot be reduced or suspended by me. And you commit that crime when, with intent to cause a serious physical injury to another person, you cause that injury to that person, by means of a dangerous instrumentality." (Emphasis added.) Id.
In Ghant v. Commissioner of Correction, 255 Conn. 1, 16, ___ A.2d ___ (2000), an issue before the Court was whether the failure of the plea canvass to recite the elements of the charged offense constituted a non-frivolous ground for appeal. "Specifically, the petitioner claim[ed] that the state's recitation of the facts included no facts supporting a finding of the intent necessary for the crime of murder. We do not agree. At the petitioner's plea canvass, the assistant state's attorney stated that the petitioner "walked up to the driver's side of the victim's vehicle, pulled a handgun and shot the victim causing his death.' The trial court stated that it was "satisfied based on what I've heard of the facts, that an adequate factual basis exists for the petitioner's plea to enter under Alford.' This court has held that statecourts are under no constitutionally imposed duty to establish a factualCT Page 7794basis for a guilty plea prior to its acceptance unless the judge is puton notice that there may be some need for such an inquiry. The entry ofan Alford plea is not sufficient to put the court on notice that it isnecessary to establish a factual basis for a guilty plea. A sufficientbasis is established, however, if the court reasonably can find that therequisite intent existed." (Emphasis added.) (Internal citations and quotations omitted.) Id., 14-15.
Relying on U.S. Supreme Court cases such as Smith v. O'Grady andHenderson v. Morgan, the Court concluded that "the failure of the plea canvass to recite the elements of the charged offense does not constitute a non-frivolous ground for appeal." Id., 16. In other words, the ground for appeal had no merit and was frivolous.
The State's recitation of the facts in support of the assault in the first degree charge included the following: "the defendant . . . placed [the victim] into a tub of scalding water, supposedly to teach him a lesson. The [victim] indicated that the defendant had grabbed him from his room, filled the tub with hot water, put his feet in the tub for some sort of punishment for something [the victim] supposedly had done." Dec. 6, 1990 Tr. at 10. Intent exists when a distinct conscious objective is sought. State v. Williams, 237 Conn. 748, 754, 679 A.2d 920 (1996). The petitioner's objective was to teach a lesson and punish a minor by placement in scalding hot water.[17] The canvassing Court explicitly found that a factual basis existed for the plea. Dec. 20, 1990 Tr. at 12.
Lastly, "[t]he record here justifies the conclusion that the petitioner's plea was knowing, intelligent and voluntary. On the guilty plea, the court had the authority to draw the inference of intent; it properly did so here. Our Supreme Court has stated that "one who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill'." (Emphasis added.) Daniel v. Commissioner of Correction,57 Conn. App. 651, 662, ___ A.2d ___ (2000), cert. den., 254 Conn. 918, ___ A.2d ___ (2000).
Or as the Court held in State v. Woods, 25 Conn. App. 275, 281,594 A.2d 481 (1991), cert. den., 220 Conn. 923, 598 A.2d 365 (1991), "intent may be inferred from the conduct of the accused. Ordinarily, the intent of the actor is a question for the trier of fact. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available." (Internal citations omitted.) CT Page 7795
This Court, therefore, finds that the facts as contained in the record of this case support the intent element of assault in the first degree. For all the above reasons, the Court finds that the petitioner knowingly, intelligently, voluntarily, and with the competent advice of counsel entered his Alford guilty plea to assault in the first degree. The petitioner's second claim also is non-meritorious.
 CONCLUSION
The Court has concluded that the petitioner has failed to demonstrate that his counsel's performance was deficient. As a result, the petitioner has failed to satisfy the Strickland-required showing that counsel's performance fell below an objective standard of reasonableness. The petitioner has additionally been unable to establish that the Alford
guilty plea entered on the charge of assault in the first degree was anything but knowing, intelligent, voluntary, with the competent advice of counsel.
The petitioner has failed to demonstrate that his trial counsel's performance fell below the standard of reasonable competence. The petition for a writ of habeas corpus is denied.
HON. DAVID M. BARRY, JTR