## STATE OF CONNECTICUT v. KAREEM HEDGE
### (AC 25372)

DiPentima, Harper and Foti, Js.

694

Argued November 16, 2005—officially released February 14, 2006

*H. Jeffrey Beck,* for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Joseph J. Harry,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Kareem Hedge, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a), possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics with the intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b) and interfering with an officer in violation of General Statutes § 53a-167a (a). The trial court also determined that the defendant had violated General Statutes § 53a-40b because he was on pretrial release at the time he committed the crimes of which he was convicted. On appeal, the defendant claims that (1) the court made improper evidentiary rulings and (2) prosecutorial misconduct during the state's rebuttal argument to the jury deprived him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. An informant told Officers Keith Ruffin and Raymond Long of the Bridgeport police department that the defendant possessed narcotics and would be driving his vehicle in the vicinity of a public housing project on March 13, 2003. The police set up surveillance of

the area on that date, and when they observed the defendant's vehicle, two uniformed officers in an unmarked car began following it. The defendant stopped and exited his vehicle, at which time the officers also stopped and exited their car. After the defendant saw them, he began running and threw a plastic bag to the ground. The officers soon arrested him and discovered that the bag contained 135 smaller bags of crack cocaine.

After a trial, the jury returned a verdict of guilty on all counts. The court rendered judgment in accordance with the verdict and subsequently found the defendant guilty of committing crimes while on pretrial release. The court sentenced the defendant to a total effective term of twenty-three years incarceration. This appeal followed.

## I

The defendant first claims that the court made improper evidentiary rulings concerning (1) a complaint he had filed with the internal affairs division of the police department, claiming that the arresting officers used excessive force and (2) hearsay statements of the informant through the testimony of one of the police witnesses. We address each part of the defendant's claim in turn.

## A

Defense counsel sought to cross-examine the first witness, a police lieutenant, as to his knowledge of the defendant's complaint, arguing that the lieutenant had a motive to lie because of the complaint. The court determined that the complaint was not relevant and therefore precluded defense counsel from questioning the lieutenant about it. After a lunch recess, the prosecutor asked the court to preclude defense counsel from questioning any of the other police witnesses about the

complaint. The court responded: "I'm not going to have a blanket order that [defense counsel] is prohibited [from questioning all of the witnesses about the complaint]. There may be a reason or circumstances [may] develop that could . . . sway the jury, so I just don't want some blanket." Defense counsel then stated: "The only claim I'm going to make is [that the complaint relates to the police witnesses'] motive and bias. I assume that the court's ruling in regard to the [cross-examination of the lieutenant], although not a blanket ruling, to allow me at another point to ask a different witness the same line of inquiry—I wasn't going to do that, assuming that's a dead issue now because of the prior ruling of the court." The court replied: "It's a dead issue, then. Don't do it." Defense counsel did not attempt to question any of the other six police witnesses about the complaint. The defendant argues that the court improperly restricted the scope of his questioning of the lieutenant and the other six police witnesses.

"Our standard of review of a claim that the court improperly limited the cross-examination of a witness is one of abuse of discretion. . . . [I]n . . . matters pertaining to control over cross-examination, a considerable latitude of discretion is allowed. . . . The determination of whether a matter is relevant or collateral, and the scope and extent of cross-examination of a witness, generally rests within the sound discretion of the trial court. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *Friezo* v. *Friezo*, 84 Conn. App. 727, 729, 854 A.2d 1119, cert. denied, 271 Conn. 932, 859 A.2d 930 (2004).

The court's discretion, however, "comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment [to the United States constitution]." (Internal quotation

marks omitted.) *State* v. *Brown*, 273 Conn. 330, 339, 869 A.2d 1224 (2005). "The sixth amendment . . . guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . As an appropriate and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted. . . . Compliance with the constitutionally guaranteed right to cross-examination requires that the defendant be allowed to present the jury with facts from which it could appropriately draw inferences relating to the witness' reliability. . . . [P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment." (Citation omitted; internal quotation marks omitted.) Id., 338. In determining whether such a violation occurred, "[w]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) Id., 340.

If we conclude that the court improperly restricted the defendant's opportunity to impeach a witness for motive, interest, bias or prejudice, we then proceed with a harmless error analysis. See *State* v. *White*, 64 Conn. App. 126, 129, 779 A.2d 776, cert. denied, 258 Conn. 910, 782 A.2d 1251 (2001). "Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength

of the prosecution's case." (Internal quotation marks omitted.) Id. "[T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant. The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 91 Conn. App. 112, 122, 881 A.2d 371, cert. denied, 276 Conn. 909, 886 A.2d 423 (2005).

Considering the nature of the excluded inquiry in the present case, we conclude that the court improperly determined that the defendant's complaint was not relevant. The existence of the complaint was relevant because it could have biased the police witnesses against the defendant. "[E]vidence tending to show motive, bias or interest of an important witness is never collateral or irrelevant. [Indeed, it] may be . . . the very key to an intelligent appraisal of the testimony of the [witness]." (Internal quotation marks omitted.) *State* v. *Christian*, 267 Conn. 710, 748, 841 A.2d 1158 (2004). This court previously has determined that the preclusion of inquiry regarding police witnesses' possible bias does not comport with the requirements of the sixth amendment. See *State* v. *Joyce*, 45 Conn. App. 390, 397–99, 696 A.2d 993 (1997), appeal dismissed, 248 Conn. 669, 728 A.2d 1096 (1999); *State* v. *Privitera*, 1 Conn. App. 709, 711–13, 476 A.2d 605 (1984).

We next evaluate whether the court's improper preclusion of questioning concerning the complaint was nonetheless harmless. We find it significant that defense counsel failed to have the complaint marked for identification and attempted to cross-examine only the lieutenant as to the complaint. In precluding that cross-examination, the court clearly stated that it would not preclude defense counsel from questioning other witnesses about the complaint because it could become pertinent later in the trial. Defense counsel then stated that he would not question any of the other six police

witnesses about the complaint because his purpose would be to impeach them for bias, and he "assum[ed that that was] a dead issue now . . . ." The court responded: "It's a dead issue, then. Don't do it." Although we are uncertain as to the import of the court's response, we do not consider it a prospective ruling as to the other six police witnesses who had not testified yet. It is counsel's responsibility to raise an issue for the court's attention at each relevant point in the trial. Counsel should not invite the court to agree or disagree with an assumption that he makes regarding an issue that may arise later in the trial. The court must have a full opportunity to consider the issue in the context of the trial as it progresses. In the present case, the court explicitly acknowledged that it would not preclude all questioning relating to the complaint because it did not know whether the complaint might become pertinent later in the trial. We therefore determine that defense counsel voluntarily relinquished his opportunity to question the other six police witnesses about the complaint, just as he chose not to have the complaint marked for identification.

Accordingly, our harmless error analysis focuses on the lieutenant's testimony. On the basis of our review of the transcript, we determine that that testimony was not particularly important because the lieutenant was one of seven police witnesses to testify at trial. His testimony largely was cumulative of the other six police witnesses' testimony. Defense counsel was permitted a wide-ranging cross-examination of the lieutenant, including questioning him about whether any of the police involved in the defendant's arrest were "upset," "overzealous" or unable to "[maintain] their cool." Furthermore, our review indicates that the prosecution had a strong case against the defendant. We therefore conclude that the defendant has not met his burden of showing that the court's improper preclusion of cross-

examination regarding the complaint affected the result of the trial. The court's improper ruling constituted harmless error.

## B

The defendant also claims that the court improperly admitted hearsay statements of the informant through the testimony of one of the police witnesses. In the portion of the transcript to which the defendant cites, the prosecutor asked that witness how the police had learned that the defendant possessed narcotics. Defense counsel objected and stated: "As a result of the information [received from the informant, the witness] can say what he did. He cannot testify as to what information he received . . . ." In accordance with defense counsel's observation, the court instructed the witness to testify as to his statements to other members of the police department. The witness then testified that he told his police colleagues that a man possessed narcotics and would be driving a vehicle in a certain area. Contrary to the defendant's claim, the court did not admit hearsay statements of the informant. The witness testified only as to his own statements to other members of the police department. Accordingly, we reject the defendant's claim.

## II

The defendant next claims that prosecutorial misconduct during the state's rebuttal argument to the jury deprived him of a fair trial. In rebutting defense counsel's argument that the police framed the defendant and invented the existence of the informant, the prosecutor sought to explain that informants do not testify in order to protect their identities. Referring to an eight year old witness in another case who was murdered, the prosecutor stated: "Did you ever hear of B. J. Brown?[1]

---

[1] "B. J. Brown" refers to Leroy Brown, Jr. See *State* v. *Peeler*, 271 Conn. 338, 348–55, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

B. J. Brown is dead. Why? He wanted to testify." Defense counsel objected to that comment but did not request a curative instruction. At oral argument before this court, the state conceded that the prosecutor's comment was improper.

We conduct a two step inquiry in analyzing claims of prosecutorial misconduct. "The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson,* 269 Conn. 563, 572, 849 A.2d 626 (2004). We recognize that "because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Nevertheless, [w]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Antonio A.,* 90 Conn. App. 286, 298, 878 A.2d 358, cert. denied, 275 Conn. 926, 883 A.2d 1246 (2005).

"The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . [The court] must view the prosecutor's comments in the context of the entire trial." (Internal quotation marks omitted.) Id., 297. "[T]he fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . It is in that context that the burden [falls] on the defen-

dant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) Id., 301. The factors to be considered in assessing the prosecutor's actions include "the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

We agree with the parties that the prosecutor's reference to Brown was improper. "It is well established that a prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Furthermore, [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . We have stated that such appeals should be avoided because they have the effect of diverting the [jurors'] attention from their duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . No trial—civil or criminal—should be decided upon the basis of the jurors' emotions." (Internal quotation marks omitted.) *State* v. *Ancona*, 270 Conn. 568, 602, 854 A.2d 718 (2004), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005). Because Brown was an eight year old witness who had been murdered and had no relationship to the defendant's case, the prosecutor's use of Brown's name constituted an improper appeal to the jury's emotions and may have distracted it from its duty to decide the case objectively.

Although the comment regarding Brown was improper, it was isolated and brief. Viewing it in the context of the entire trial, we conclude that it was not so prejudicial as to deprive the defendant of a fair trial. We therefore reject the defendant's claim of prosecutorial misconduct.

The judgment is affirmed.

In this opinion the other judges concurred.