STATE OF CONNECTICUT *v.* RICHARD P. LEMAY
(AC 27338)

McLachlan, Harper and Mihalakos, Js.

Argued October 19, 2007—officially released January 29, 2008

*Michael Zariphes*, special public defender, for the appellant (defendant).

*Thomas M. DeLillo*, assistant state's attorney, with whom, on the brief, were *Michael Regan*, state's attorney, and *Sarah E. Steere*, assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Richard P. Lemay, appeals from the judgment of conviction, following a jury trial, of two counts of violation of a protective order in violation of General Statutes § 53a-223 (a) and one count of harassment in the second degree in violation of General Statutes § 53a-183 (a) (3). The defendant claims that the trial court improperly (1) denied his motion in limine to preclude the introduction of evidence of telephone calls made to the victim that were not the basis of the charged crimes and (2) restricted his cross-examination of the complaining witness. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Pamela Smith and the defendant were married for thirteen years prior to divorcing in December, 2003. In April, 2004, the defendant was arrested on a warrant for allegedly stalking Smith during the prior month. On April 26, 2004, the court issued a protective order that prohibited the defendant from having any contact with Smith. The defendant was present at the hearing on that matter and received a copy of the order.

In July, 2004, the defendant was arrested once again for an incident involving Smith. On July 12, 2004, the court issued a second protective order that prohibited him from having contact with Smith. The defendant also was present at the hearing and received a copy of the order.

At some point prior to November, 2004, Smith began to receive anonymous calls on her home and cellular telephones in which the caller, without speaking, would make a "banging" noise before hanging up. In November, 2004, Smith began keeping a handwritten log of those incoming calls to her home and cellular telephones where the caller made a banging noise. Smith also used her answering machine to record the calls. Smith contacted the Old Lyme police department, seeking its help in ascertaining who was placing the anonymous telephone calls. The Old Lyme police department was unable to identify who was placing the anonymous telephone calls. Smith, with the assistance of her brother, thereafter retained the services of a private investigative firm in an attempt to ascertain the source of the calls.

On June 20, 2005, Michael Melillo and Deborah Ubertalli, two private investigators from Markle Investigations, began a three to four day surveillance operation of the defendant. The investigators were given a photograph of the defendant and a description of his vehicle

from which they were able to identify the defendant for their surveillance. At approximately 12:30 a.m. on June 21, 2005, they observed the defendant place a telephone call from a pay telephone located in a convenience store parking lot at 227 Shore Road, Old Lyme. The investigators then observed the defendant bang the telephone receiver on the metallic box on the outside of the pay telephone. Melillo videotaped the defendant placing this telephone call. The defendant then hung up the telephone, got back into his car and returned home.

Smith testified that at approximately 12:30 a.m. on June 21, 2005, she received a call on her home telephone line in which she heard a banging noise, but the caller did not engage in any conversation before hanging up. On June 24, 2005, Smith filed a complaint with the state police stemming from the June 21, 2005 telephone call. On the basis of the information provided by Smith and that collected by the private investigators, state police Trooper Christopher Olsen was granted a search warrant for Smith's telephone records. The telephone records establish that on June 21, 2005, at approximately 12:31 a.m., Smith received a telephone call that originated from a pay telephone located at a convenience store at 227 Shore Road, Old Lyme. The defendant subsequently was arrested and charged with two counts of violation of a protective order in violation of § 53a-223 and one count of harassment in the second degree in violation of § 53a-183.

The defendant's case was tried in September and October, 2005. Following the jury's verdict of guilty of all counts charged, the defendant was sentenced on December 20, 2005, to a total effective term of imprisonment of five years, suspended after three years, and five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion in limine to preclude the introduction of evidence of other anonymous telephone calls received by the victim that were not the basis of the charged crimes. Specifically, the defendant asserts that (1) the evidence was not relevant to the issue of whether he made a telephone call to Smith on June 21, 2005, (2) information about the telephone calls was evidence of inadmissible, uncharged misconduct, (3) the evidence did not fall into the common scheme, design or pattern exception, (4) the prejudicial effect of the evidence outweighed its probative value, (5) the evidence was cumulative and (6) the introduction of the evidence was not harmless error. We disagree.

The following additional facts are required for the resolution of the defendant's claim. At trial, the defendant filed a motion in limine to preclude the state's introduction into evidence of (1) Smith's handwritten log of incoming calls to her home and cellular telephones, (2) an answering machine recording that Smith used to record incoming calls and (3) testimony from a Southwest Bell Corporation official establishing that a number of telephone calls to Smith's residence were placed from various locations throughout Connecticut. In support of his motion, the defendant argued that the evidence was not relevant, that it was evidence of uncharged misconduct and that its prejudicial effect outweighed its probative value. The state argued that the evidence was necessary to establish for the jury the reason why Smith called the police department and enlisted her brother's help in obtaining the services of a private investigative firm. The court, after hearing oral argument, denied the defendant's motion.

The defendant thereafter objected when the state sought to introduce into evidence Smith's handwritten

log of incoming telephone calls. The court overruled the objection but gave the jury a limiting instruction.[1] The state next sought to have Smith's answering machine recording admitted into evidence and played for the jury. The defendant stated that he did not object, subject to the court's giving the jury a limiting instruction. After the recording was played, the court gave the jury a limiting instruction regarding its use of the answering machine recording.[2] The state thereafter elicited testimony from a Southwest Bell Corporation official that established where the incoming calls to Smith's home originated. The defendant objected to this testimony on ground of relevance. The court overruled the objection and gave a limiting instruction.[3]

Our standard of review for evidentiary rulings is well established. "[T]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's

---

[1] The court's limiting instruction was: "This is a, as the witness testified, a list that she kept. There's no charges pending against the defendant based on that list, right.

"There's no evidence in front of you or the court that those calls were made by the defendant. Okay. This is a list that the alleged victim kept based on phone calls that were coming into her home.

＊ ＊ ＊

"So, [the telephone call of] June 21, 2005, for everyone's benefit, is the call that is currently charged against he defendant.

"The other calls are not. And, in fact, there's no evidence whatsoever at this point that there were—those other calls were made by the defendant."

[2] The court's limiting instruction was: "This is a full exhibit, but as I told you before, there's no evidence about who made these calls. All right. There's no evidence that the defendant, the accused, made those particular calls, all right, just that they came into this answering machine at those various times. That's what that—that's what that tape is."

[3] The court's limiting instruction was: "I'm allowing this, but that's not to say the defendant is charged with anything to do with them, just where they emanated from. Okay?"

ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Pilotti*, 99 Conn. App. 563, 567, 914 A.2d 1067, cert. denied, 282 Conn. 903, 919 A.2d 1037 (2007).

"Evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . The proffering party bears the burden of establishing the relevance of the offered testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Glenn*, 97 Conn. App. 719, 726–27, 906 A.2d 705 (2006), cert. denied, 281 Conn. 913, 916 A.2d 55 (2007).

Although relevant evidence is generally admissible, it may be excluded if such evidence is unfairly prejudicial. See Conn. Code Evid. § 4-3. "[E]vidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 66, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004). "[T]he primary responsibility for conducting the balancing test to determine whether the evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *John G.*, 100 Conn. App. 354, 363, 918 A.2d 986, cert. denied, 283 Conn. 902, 926 A.2d 670 (2007); see also *State* v. *Gibson*, 75 Conn. App. 103, 110–13, 815 A.2d 172 (2003), rev'd in part on other grounds, 270 Conn. 55, 850 A.2d 1040 (2004).

In the present case, the court denied the defendant's motion in limine to preclude evidence of other telephone calls that were made to Smith. The defendant argues that the evidence had little probative value and that its prejudicial effect clearly outweighed any probative value that the evidence may have had. The defendant contends that once the jury heard this evidence, it was predisposed to conclude that he was harassing Smith and, therefore, was guilty of the present charges against him.

We conclude that the court properly weighed the prejudicial impact that the evidence would have on the defendant, along with its probative value. The state argued that the evidence was relevant because it could assist the jury in understanding why Smith hired a private investigative firm to follow and to videotape the defendant. The court properly exercised its discretion in determining that the testimony was relevant on the basis of this rationale. We note further that the court minimized any potential prejudice by giving the jury a detailed limiting instruction at each juncture in the trial when the specific pieces of evidence were offered. These limiting instructions sought to obviate any prejudicial effect that the evidence might have had by informing the jury that the evidence was not evidence of wrongdoing on the part of the defendant but simply evidence that Smith had received anonymous telephone calls. "[I]n the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them." (Internal quotation marks omitted.) See *State* v. *Carpenter*, 275 Conn. 785, 828, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006). The defendant has not demonstrated that the court's limiting instruction was ineffective or not followed by the jury, and we conclude that the limiting instruction sufficiently eliminated any possible prejudice to the defendant.

In short, we conclude that the court did not abuse its discretion denying the defendant's motion in limine to preclude the introduction of evidence of other anonymous telephone calls received by the victim that were not the basis of the charged crimes. Because we conclude that the court did not abuse its discretion in admitting the evidence, we need not reach the question of whether any error in admitting the evidence nevertheless was harmless error. See *State* v. *Hedge*, 93 Conn. App. 693, 698–99, 890 A.2d 612 (noting that if trial court abused discretion, appellate court must proceed with harmless error analysis), cert. denied, 277 Conn. 930, 896 A.2d 102 (2006).

## II

The defendant's second claim is that the court violated his constitutional right to confrontation under the sixth amendment to the United States constitution.[4] Specifically, the defendant argues that his constitutional rights were violated when the court limited his ability to cross-examine Smith regarding (1) her bias, prejudice, motive and interest in testifying against him and (2) third party culpability. Alternatively, he claims that if the court's ruling was an evidentiary issue, the court abused its discretion. We are not persuaded by either argument.

The following additional facts are required for the resolution of the defendant's claim. At trial, the state

[4] The defendant claims that the court improperly denied him his right to cross-examine an adverse witness in violation of the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut.

Although the defendant refers to his right to confrontation under article first, § 8, of the Connecticut constitution, he has failed to explain why he is entitled to any greater protection under the confrontation clause of the state constitution than he is under the analogous provisions of the federal constitution. See *State* v. *Sullivan*, 244 Conn. 640, 646 n.6, 712 A.2d 919 (1998). We therefore limit our review to the defendant's federal constitutional claim. See, e.g., *State* v. *Eady*, 249 Conn. 431, 435 n.6, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

called Smith to testify. On cross-examination, the defendant sought to elicit testimony from Smith in a number of areas that the state objected to as irrelevant to the matter for which the defendant was charged.

The defendant first attempted to ask Smith about the degree of hostility in the couple's divorce. The defendant wanted to show that Smith's hostility toward him was motivation to frame him. After the state objected, the court permitted the defendant to ask Smith whether it was "a litigious divorce." The court, however, did not permit the defendant to delve deeper into the nature of the divorce proceedings, including inquiry into the specific issues that were contested and the number and substance of court filings.[5]

The defendant then sought to elicit testimony showing that Smith had prevented him from having contact with their daughter and asked Smith whether it was true that he had alleged in the divorce proceedings that she had kidnapped the couple's daughter. After the state objected and the jury was excused, the defendant argued that this testimony was necessary to provide the jury with an adequate picture of the custody dispute and its associated level of hostility. The defendant also believed that the evidence pertained to Smith's credibility. The state argued that this testimony was irrelevant and that the defendant improperly was attempting to establish a possible motive for his having called Smith's telephone number. The court ruled that the proposed testimony was inadmissible because it did not attack Smith's credibility but, rather, was an attempt to establish the defendant's motive for calling.

The defendant next sought to question Smith about a prior restraining order that he alleged was secured

---

[5] For example, the defendant sought to ask Smith about the expenses and the amount of time that the divorce consumed, whether there were 122 motions filed and whether he had filed a motion for contempt against her.

through Smith's perjury. The defendant believed that this alleged instance of uncharged perjury was directly relevant to Smith's credibility as a witness. The state objected and argued that any alleged perjury by Smith was a collateral matter that was not related to the charges against the defendant. The court ruled that because the defendant was not charged with violating the prior restraining order, the facts and circumstances surrounding its issuance were irrelevant in the current proceeding and that no prejudice would flow from excluding any evidence on the matter.

Last, the defendant asked Smith whether she had a profile on "match.com," an Internet dating site. The state again objected on the ground of relevance. The defendant stated that he sought to elicit testimony from Smith on whether she currently was dating and whether any of her dates matched the physical description of the person seen on the videotape made by the private investigators. The court ruled that any evidence of Smith's social life was irrelevant and that the private investigators, not Smith, were the proper individuals to question about the videotape and its contents.

The defendant now claims that the court's evidentiary rulings so hampered his ability to cross-examine Smith that his constitutional right of confrontation was violated.

Our Supreme Court has articulated the legal principles that govern our analysis of the defendant's claims. "The federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . includes the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well

as the prosecution's to the jury so that it may decide where the truth lies. . . .

"A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . Thus, our law is clear that a defendant may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated. . . .

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not [unfairly] prejudicial or merely cumulative. . . .

"Finally, [i]t is well established that a trial court has broad discretion in ruling on evidentiary matters, including, matters related to relevancy. . . . Accordingly, the trial court's ruling is entitled to every reasonable presumption in its favor . . . and we will disturb the ruling only if the defendant can demonstrate a clear abuse of the court's discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Sandoval*, 263 Conn. 524, 541–43, 821 A.2d 247 (2003).

## A

The defendant's first evidentiary claim is that the court unduly restricted his ability to examine Smith regarding her bias, prejudice, motive and interest in testifying. The defendant argues that the sixth amendment's confrontation clause dictates that he be allowed to cross-examine Smith regarding, among other things, the nature of the couple's divorce and the alleged kidnapping and perjury and that the court's preclusion of this evidence was an abuse of discretion. We are not persuaded.

"Although the trial court has broad discretion in determining the admissibility of evidence and the extent of cross-examination, the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment to the United States constitution. . . . The sixth amendment to the United States constitution guarantees the right of an accused in a criminal prosecution to confront and cross-examine the witnesses against him. . . . [Our Supreme Court has] held that [t]he primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Therefore, an accused's right to cross-examination to elicit facts tending to show motive, interest, bias and prejudice may not be unduly restricted by the wide discretion of the trial court. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . In order to comport with the constitutional standards embodied in the confrontation clause,

the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) *State v. Valentine*, 255 Conn. 61, 70–71, 762 A.2d 1278 (2000).

The confrontation clause does not give the defendant the right to engage in unrestricted cross-examination. Id., 71. The defendant was able to elicit testimony from Smith that both of them had been engaged in a litigious divorce and custody dispute. The court, however, precluded testimony on the specific details of the divorce and custody dispute because those details were collateral matters and irrelevant to the issues being tried. The nature of the excluded inquiry went far beyond what was necessary to establish that Smith's testimony was possibly tainted by bias, prejudice, motive and interest. Furthermore, the court did allow the defendant latitude in questioning Smith regarding any bias, prejudice, motive and interest that she may have had by permitting a limited inquiry into the divorce and custody dispute and did not exclude other avenues of questioning regarding bias, prejudice, motive and interest.

In light of the foregoing, we conclude that the defendant was allowed sufficient cross-examination into the areas of bias, prejudice, motive and interest so as to satisfy the requirements of the federal constitution.

B

The defendant also challenges the court's evidentiary ruling excluding all evidence of Smith's social life as irrelevant. The defendant argues that he was deprived of his constitutional right to present a defense because the court precluded all testimony on this subject. We do not agree.

The defendant has framed this component of his second claim, in part, on constitutional grounds. Our resolution of his claim, however, turns on evidentiary grounds. "Our Supreme Court has stated that the defendant's constitutional right to present a defense does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated." (Internal quotation marks omitted.) *State* v. *Eagles*, 74 Conn. App. 332, 335, 812 A.2d 124 (2002), cert. denied, 262 Conn. 953, 818 A.2d 781 (2003).

"[A defendant has] the right to present a defense [and] the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." (Internal quotation marks omitted.) *State* v. *Cerreta*, 260 Conn. 251, 261, 796 A.2d 1176 (2002). In exercising his constitutional right to present a defense, "a defendant may introduce evidence which indicates that a third party, and not the defendant, committed the crime with which the defendant is charged. . . . The defendant, however, must show some evidence which directly connects a third party to the crime with which the defendant is charged. . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused." (Internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 354, 796 A.2d 1118 (2002). "Unless that direct connection exists it is within the sound discretion of the trial court to refuse to admit such evidence when it simply affords a possible ground

of possible suspicion against another person." (Internal quotation marks omitted.) *State* v. *Baker,* 50 Conn. App. 268, 279, 718 A.2d 450, cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998).

"The admissibility of evidence of third party culpability is governed by the rules relating to relevancy. . . . No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. . . . The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Rivera,* 70 Conn. App. 203, 211, 797 A.2d 586, cert. denied, 261 Conn. 910, 806 A.2d 50 (2002). "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Conn. Code Evid. § 4-3. Unless there is a direct connection between the third party and the crime charged, "it is within the sound discretion of the trial court to refuse to admit such evidence when it simply affords a possible ground of possible suspicion against another person." (Internal quotation marks omitted.) *State* v. *Boles,* 223 Conn. 535, 549–50, 613 A.2d 770 (1992).

In order to cross-examine Smith on her social life and to argue to the jury that the telephone call on June 21, 2005, was made by someone Smith previously had dated, the defendant was required to make an offer of proof directly linking this person to the telephone call. See *State* v. *West,* 274 Conn. 605, 625, 877 A.2d 787 (not enough to show another had motive to commit crime), cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005). Although there was evidence of a number

of anonymous telephone calls made to Smith's residence, that in and of itself was not sufficient to connect an acquaintance of Smith to the call on June 21, 2005. Merely establishing that Smith was acquainted with other men is not sufficient proof to link them to the telephone call in question. Because there was no direct evidence of third party culpability, the cross-examination proposed by the defendant was irrelevant in this case. The court, therefore, did not abuse its discretion in excluding testimony about Smith's dating habits.

The judgment is affirmed.

In this opinion the other judges concurred.